OPINION OF THE COURT
Wachtler, J.
In two separate, and unrelated, prosecutions for murder and burglary the defendant moved to suppress evidence seized from his room pursuant to several search warrants which were based, in part, on observations made by a police officer while in the defendant’s room. The defendant urged in each case that he did not consent to the initial police entry of his room. In the murder prosecution the issue was decided against the defendant after a hearing at which he chose not to testify. At the suppression hearing in the burglary case, conducted after the defendant’s conviction for murder, the defendant offered to testify on the consent issue but was held to be collaterally estopped from relitigating the point.
The defendant now appeals from an Appellate Division order affirming his conviction, after trial, for burglary and petit larceny. He claims that collateral estoppel should not be employed against a defendant at any stage of a criminal *61 case, including a pretrial suppression hearing; and, alternatively that even if the doctrine is generally applicable, the court should not have employed it under the circumstances of this case. The District Attorney disputes these contentions and, in the alternative, urges that if the court erred in holding the defendant collaterally estopped on the consent issue, a new hearing is not required because even if the observations in the defendant’s room were excluded, the information remaining in the warrant application would alone be sufficient to establish probable cause.
On September 26, 1975 one of the defendant’s neighbors informed the police that a man, fitting the defendant’s description, had placed a tan plastic bag containing a woman’s clothing, identifying papers and personal effects in a garbage can in front of the neighbor’s Lynbrook home. The bag also contained a surgical glove, blackened goggles and other items. The police in Nassau discovered that the personal items belonged to a young woman who had been reported missing by her father in Kings County, and who was later found to have been murdered.[1] Another neighbor told the police that she had seen a man carrying the bag through her backyard toward the street, after which he returned without the bag and entered the house behind hers. The police placed that house under surveillance.
Later in the day, seeing the silhouettes of two men and a woman against one of the windows, a police officer went to the door to investigate. The door was answered by the defendant, who fit the description of the man who had been seen carrying the bag. The officer told the defendant that his name had come up during an investigation, and asked the defendant if he would come to headquarters to answer some questions. The defendant agreed and went to his room to get a jacket. According to the officer the defendant also agreed that the officer could accompany the defendant to his room where the officer observed a tan plastic garbage bag, a surgical glove, butcher knife and meat cleaver.
At the police station the defendant, assisted by an attor *62 ney, signed a statement in which he claimed that he had found the bag, brought it to his home, gone through it looking for valuable items, and finding none, placed it in a neighbor’s garbage can.
The following day, September 27, all of this information, including the signed statements of the defendant and his neighbors, was presented to a Justice in Nassau County in support of an application for a search warrant. That same day the police returned with the warrant and seized a tan plastic garbage bag, surgical glove, knife and cleaver from the defendant’s room. While executing that warrant, the officers came across evidence of two burglaries, including a money bag bearing a bank serial number which, they discovered, had been reported stolen from a beauty parlor in Oceanside.
The police then obtained a second warrant, which is the subject of this appeal. On September 29, Nassau police officers executed the warrant and recovered the evidence of the burglaries from the defendant’s room. On that occasion they were accompanied by New York City police officers who were executing another search warrant issued by a New York City Justice in connection with the murder.
In Kings County the defendant was indicted for murder. In Nassau County he was indicted for burglary and related offenses committed at the Oceanside beauty parlor.[2]
Prior to trial on the murder charge the defendant moved in Kings County to suppress the evidence seized when the New York City warrant was executed. He contended that this warrant had been issued in violation of certain statutory requirements and that in executing the warrant the police had, in some instances, searched places and seized evidence not authorized in the warrant. He also sought to show, by cross-examination of the Nassau County police officer, that the initial entry of the defendant’s room on September 26 was a trespass and that all the evidence subsequently obtained was tainted. The officer, however, testified that the *63 defendant had given him permission to accompany him while he obtained his jacket. The defendant, as indicated, chose not to testify at this hearing.
At the conclusion of the hearing the court delivered an oral opinion from the Bench in which he granted the defendant’s motion in part and suppressed certain items taken from places not specified in the warrant. When the defendant requested a ruling on the consent issue the court stated that he credited the police officer’s testimony, specifically noting that there was no testimony to the contrary.
A jury subsequently found the defendant guilty of murder. The conviction was affirmed by the Appellate Division (60 AD2d 896) and leave to appeal to this court was denied (44 NY2d 956).
After defendant’s conviction for murder in Kings County he was brought to trial on the burglary charge in Nassau County. Prior to that trial he moved to suppress the evidence taken from his room pursuant to the second Nassau County warrant executed on September 29. First he claimed that the warrant application contained material false statements of fact. Secondly, he urged, as he had in the earlier suppression hearing, that he did not consent to the police entry of his room on September 26. At this proceeding, however, he offered to testify on the point. He claimed that he had not been able to fully litigate the issue, by testifying on his own behalf, at the hearing in the murder case because he did not want his testimony to be used against him in any way, even for the limited purposes of impeachment, in view of the seriousness of the charge he faced at the trial in that case.[3]
The court conducted a hearing on the defendant’s first point and found that, despite some inconsistencies or inaccurate statements with respect to the timing of certain events, there were no material false statements. On the second *64 point, however, the court held the defendant was precluded from testifying or otherwise relitigating the consent issue which had been decided against him at the prior hearing where he had a full opportunity to testify, although he had chosen not to do so.
As indicated, the defendant was convicted at trial. The Appellate Division affirmed in an opinion in which it concluded that all the prerequisites for the application of collateral estoppel had been met in this case. The court recognized that in Matter of McGrath v Gold (36 NY2d 406) we had held that the District Attorney could not be collaterally estopped by a suppression determination made in another case because the order was not final. Here, however, the Appellate Division concluded that the order denying suppression in the murder case had become final and, thus binding upon the defendant in the burglary case, once he had been convicted on the murder charge.
The common-law doctrine of collateral estoppel is designed to conserve the time and resources of the court and parties by precluding a party from litigating an issue which was resolved against him in another action where he had a full and fair opportunity to contest the determination (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65). The doctrine, however, is not to be rigidly or mechanically applied and must on occasion, yield to more fundamental concerns (People v Berkowitz, 50 NY2d 333, 344). It serves an important role in civil cases, where it originated and where society’s primary concern is to provide a means of peaceful, swift and impartial resolution of private disputes (People v Berkowitz, supra, at p 345.) It is less relevant in criminal cases where the pre-eminent concern is to reach a correct result and where other considerations peculiar to criminal prosecutions may outweigh the need to avoid repetitive litigation (People v Berkowitz, supra, at pp 344-345). Thus, although it is frequently said that collateral estoppel applies to criminal cases (see, e.g., Matter of McGrath v Gold, 36 NY2d 406, 411, supra; Matter of Levy, 37 NY2d 279, 281; People ex rel. Dowdy v Smith, 48 NY2d 477, 482-484; People v Berkowitz, supra, *65 at p 344) it cannot be applied in quite the same way as in civil cases (People v Reisman, 29 NY2d 278, 285).[4]
In this case the defendant offered evidence, his own testimony, which was not introduced to the court at the prior suppression hearing in the murder case. The defendant’s testimony must be considered important proof bearing directly on the correctness of any determination as to whether he consented to the entry of his room, and it could well alter the result. Indeed at the suppression hearing in the other case, the court noted that the finding that the defendant consented was virtually dictated by the fact that the police officer’s testimony was not contradicted.
The defendant, of course, could have testified at the first suppression hearing, and thus had the opportunity to fully litigate the issue at that time, in the sense that he had a legal right to do so. However, when the application of collateral estoppel is at issue, any question as to whether a party had “a full and fair opportunity” to litigate the prior determination is not concluded by a finding that there was no violation of due process. The court must also consider the “realities of the [prior] litigation”, including the context and other circumstances which, although not legal impediments, may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him (see Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, supra; Parklane Hosiery Co. v Shore, 439 US 322, 330-331). The Appellate Division felt that the seriousness of the murder *66 charge provided sufficient incentive to the defendant to fully litigate at every stage, especially prior to trial where a favorable determination might eliminate the need to face the charge at trial. However, the seriousness of the charge may well have the opposite effect of discouraging the defendant from testifying or revealing the nature of his case at preliminary proceedings for fear that his testimony may somehow aid the prosecution in obtaining a conviction at trial. Thus, from a practical viewpoint, the defendant faced a risk at the first hearing, in the murder case, that he did not face at the hearing in this case, at which point he attempted for the first time to fully litigate the consent issue by offering to testify on his own. behalf.
The defendant’s decision not to testify at the first hearing but to do so in this case was a legitimate one. Constitutionally the accused has the right to testify or not to testify at any criminal action or proceeding. The doctrine of collateral estoppel cannot be said to be superior to those rights, particularly when it operates to preclude the court from considering evidence which was not available to the court at the prior proceeding, and which if considered here would have involved a minimal expenditure of time in a hearing already under way.
Our conclusion that the defendant should not have been held to be collaterally estopped from disputing the consent issue does not require reversal or a new hearing in this case. There is no need to conduct a hearing on the contested statements if the remaining information in the warrant application is itself sufficient to establish probable cause (see, e.g., Franks v Delaware, 438 US 154, 171-172; People v Seidita, 49 NY2d 755). In this case, if we ignore everything that occurred after the police entered the defendant’s room, the other information submitted in support of the warrant application — the statements of the victim’s father, and the various neighbors, as well as the testimony and reports of the police investigation up to that point — show that the defendant was in recent possession of a bag containing torn and disfigured clothing, undergarments, personal papers and effects of a young woman who had been reported missing for several days; that the bag also con *67 tained one surgical glove, darkened goggles, tape and other items indicating she had been abducted; and that the defendant was seen coming from his house with the bag and returning home without it after surreptitiously placing it in a neighbor’s garbage can in another street. Based on these circumstances alone the court issuing the warrant could reasonably conclude that there was a probability that additional evidence relating to the missing girl might be found in the defendant’s home.
Accordingly, the order of the Appellate Division should be affirmed.

. Although the victim’s nude body was found that same day, September 26, in Kings County, it appears that the Nassau County police officer in charge of the case was not informed of this until September 28.

, Although two indictments were returned in Nassau County for two separate burglaries, on this appeal we are only concerned with the Oceanside burglary. The record does not indicate the disposition of the other indictment.

. In one respect, at least, the defendant’s testimony at the hearing could not be used against him. “ [W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection” (Simmons v United States, 390 US 377, 394; but, also, see United States v Kahan, 415 US 239).

. Prior determinations made in criminal cases have been held by this court to have collateral estoppel effect in subsequent civil cases (see, e.g., S. T. Grand, Inc. v City of New York, 32 NY2d 300; Vavolizza v Krieger, 33 NY2d 351) and administrative proceedings (People ex rel. Dowdy v Smith, 48 NY2d 477, supra). But when it has been urged that such determinations should preclude the defendant or the People in a subsequent criminal action, we have found collateral estoppel inapplicable under the circumstances thus far presented (see, e.g., People v Lo Cicero, 14 NY2d 374, 380; People v Reisman, 29 NY2d 278, 285, supra; Matter of McGrath v Gold, 36 NY2d 406, supra; People v Berkowitz, 50 NY2d 333, supra; cf. Matter of Martinis v Supreme Ct. of State of N. Y., 15 NY2d 240), except, of course, in cases where relitigation of a fact previously resolved in the defendant’s favor would also be constitutionally precluded by the double jeopardy clause (see, e.g., People v Dreares, 11 NY2d 906; cf. People v Berkowitz, supra, at pp 343-344).