OPINION OF THE COURT
Simons, J.
Defendant has been convicted after trial of several offenses arising out of a 1978 bank robbery. He does not contest the validity of these convictions; rather, he insists that the sentence imposed upon him as a second felony offender violates the double jeopardy clause of both the United States Constitution (US Const 5th amend), made applicable to the States through the 14th Amendment (US Const 14th amend; see, Benton v Maryland, 395 US 784), and the New York State Constitution (NY Const, art I, § 6). This is so, he claims, because County Court used a 1969 Florida conviction for attempted robbery as a predicate felony when it sentenced him although the prosecution had failed to prove his identity as the subject of that judgment in a prior persistent felony offender hearing. We affirm the judgment and hold that the protections embodied in the double jeopardy clauses of the Federal and State Constitutions do not apply to these enhanced sentencing proceedings *227 required under New York’s second and persistent felony offender statutes (Penal Law §§ 70.06, 70.10).
Following defendant’s trial in 1979, County Court determined that enhanced sentencing might be appropriate because of defendant’s prior record and it conducted a persistent felony hearing for that purpose (CEL 400.20). At the hearing defendant admitted that he had previously been convicted in Florida of attempted robbery and aggravated assault in 1969 and escape in 1971 although the convictions were in the name of Leroy Cooper. The court found defendant to be a persistent felony offender and sentenced him accordingly. On appeal, the Appellate Division affirmed defendant’s convictions but vacated his sentence because the court had failed to give defendant prior notice, as the statute requires, of a factor in his background which it relied upon in making its determination that a persistent felony offender sentence was warranted (see, People v Sailor, 85 AD2d 746). It remitted the matter for resentencing.
On remittal, County Court issued a new persistent felony offender statement (see, CPL 400.20 [3]) setting forth the identical Florida convictions that had served as the basis for the previous determination and ordered another hearing. This time, however, defendant denied that he was the subject of these prior Florida convictions and announced that he would put “the People to the burden of proving that he is the same person” as Leroy Cooper. At the hearing which followed, the People introduced certificates of defendant’s 1969 and 1971 Florida convictions and they then attempted to prove that Leroy Cooper was the defendant by introducing defendant’s FBI rap sheet and a certified copy of the transcript of the prior persistent felony offender hearing at which defendant had admitted the convictions. The court rejected the identity evidence because it found both documents constituted hearsay and were inadmissible. The prosecution offered no further proof and the court found that defendant was not a persistent felony offender because the People had failed to prove that he was the subject of the prior Florida convictions.
Before sentence was imposed, the prosecution filed a predicate felony conviction statement alleging the same Florida convictions that had been the subject of defendant’s two prior persistent felony offender hearings and sought to have defendant adjudged a second felony offender (see, CPL 400.21 [2]; Penal Law § 70.06). At the preliminary examination that followed, defendant objected to the proceeding on grounds of double jeopardy and collateral estoppel because the People were using the *228 same convictions that they had failed to prove in the earlier persistent felony offender hearing. The court rejected these contentions and ordered a hearing. Following the hearing, the court found that the prosecution had proved that defendant was convicted of attempted robbery in Florida in 1969 and that the conviction constituted a proper predicate felony conviction and it sentenced defendant as a second felony offender.
Defendant asserts that the constitutional guarantees against double jeopardy prevent the prosecution from subjecting him to a second felony offender hearing on the basis of the same convictions that the People failed to prove at his prior persistent felony offender hearing. He also contends that the common-law doctrine of collateral estoppel precludes the People from relitigating whether he and Leroy Cooper are one and the same person but that even if constitutional double jeopardy and common-law collateral estoppel principles do not operate to bar imposition of the second offender sentence he has received, he still must be sentenced as a first offender because his 1969 Florida conviction for attempted robbery is not the equivalent of a New York felony and therefore is not a proper predicate for the second offender sentence.
I
The collateral estoppel claim must be resolved first because if the litigation can be resolved on that ground the constitutional claim should not be addressed (see, Matter of Beach v Shanley, 62 NY2d 241, 254; People v Felix, 58 NY2d 156, 161).
Collateral estoppel principles, as they exist independent of the prohibition against double jeopardy, apply to criminal as well as civil actions, but because of the different interests involved, they are applied with greater flexibility in criminal matters than in civil litigation (see, People v Plevy, 52 NY2d 58, 64-65; People v Berkowitz, 50 NY2d 333, 344-345; People ex rel. Dowdy v Smith, 48 NY2d 477, 482-484). Society’s primary interest in civil disputes is that they be decided in a peaceful, orderly and impartial manner. Thus litigation-limiting estoppel principles are applied liberally in civil litigation. They are not so readily applied in criminal litigation, however, because in those matters society is concerned not only with seeing that guilt or innocence is established but that it is established correctly. Collateral estoppel should not preclude the prosecution in this case from relitigating defendant’s prior felony convictions at the second felony offender hearing because: (1) there was no final judgment rendered in the prior hearing (compare, People v Plevy, *229 supra, at p 64, with Matter of McGrath v Gold, 36 NY2d 406, 412); (2) the prosecution could not, as a matter of law, appeal the discretionary persistent felony offender determination (see, CPL 450.30 [2]; Restatement [Second] of Judgments § 28 [1]); (3) the prosecution did not receive a full and fair adjudication of the issue in the persistent felony offender hearing because the court erroneously excluded evidence of defendant’s formal judicial admission, an exception to the hearsay rule (see, Richardson, Evidence § 216, at 191-193 [Prince 10th ed]) and (4) arguably the determination concerning the prior attempted robbery conviction was not essential to the determination of two or more prior felonies at the persistent felony offender hearing; the same finding would have been required if the other two prior convictions were not proved (see, Penal Law § 70.10 [1] [a]). We proceed, therefore, to defendant’s constitutional claim.
JL
The constitutional guarantee against double jeopardy provides protection against successive prosecutions for the same offense and against multiple punishments for the same offense (United States v DiFrancesco, 449 US 117, 129, quoting North Carolina v Pearce, 395 US 711, 717). Accordingly, it has had only limited application to sentencing until recently (see, United States v DiFrancesco, supra, at pp 133-135). In Bullington v Missouri (451 US 430) and Arizona v Rumsey (467 US 203,104 S Ct 2305, 81 L ed 2d 164), however, the United States Supreme Court held that the protections embodied in the double jeopardy clause of the 5th Amendment apply to trial-type determinations of punishment. Because these decisions are central to defendant’s argument, we analyze them in some detail.
The issue in Bullington was whether or not the State could seek the death penalty at retrial after the defendant had been sentenced to life imprisonment at the punishment phase of his first trial.[1] The court noted that it was “well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been acquitted for the crime charged” but that this principle had not been extended to sentencing decisions because “[t]he imposition of a particular sentence usually is not regarded as an ‘acquittal’ of any more severe sentence that could have been imposed” (Bullington v Missouri, 451 US 430, 437-438, supra; *230 see also, United States v DiFrancesco, 449 US 117, 129-130, supra). It found, however, that the sentencing procedures required by the Missouri death penalty statute differed “significantly” from those employed in its prior double jeopardy-sentencing decisions in three material ways. First, the “unbounded discretion” that normally applied to sentencing decisions was replaced by only two alternatives, death or life imprisonment without parole for 50 years. Second, the statute provided specific substantive standards to guide the jury’s choice of the appropriate punishment in the form of 10 aggravating and 7 mitigating circumstances. Third, the statute provided certain procedural safeguards, the most significant of which was that the prosecution had the burden of proving “beyond a reasonable doubt” the existence of at least one aggravating circumstance not outweighed by mitigating circumstances (Bullington v Missouri, supra, at p 438).
The court distinguished its only prior decision involving a bifurcated sentencing proceeding, United States v DiFrancesco (449 US 117, supra). The court held that DiFrancesco, which involved a government appeal of a sentence imposed under the Federal “dangerous special offender” statute (see, 18 USC §§ 3575-3576), was not on point because (1) it involved appellate review rather than a de novo fact finding, (2) the sentencer, a Federal Judge, had a large amount of discretion in imposing sentence and (3) the prosecution’s burden there was merely a preponderance of the evidence (Bullington v Missouri, supra, at pp 440-441).
Instead, the court relied on Burks v United States (437 US 1) and Green v United States (355 US 184), and it distinguished North Carolina v Pearce (395 US 711, supra) in which it had held that imposition of a more severe sentence on retrial following the reversal of a conviction does not violate double jeopardy (id., at p 723). Burks held that a defendant may not be retried if the reversal of his conviction is based on an appellate finding of insufficient evidence to convict (Burks v United States, supra, at p 18). Green held that double jeopardy barred retrying a defendant on a charge of first degree murder after an appellate reversal of his conviction, when the jury at the first trial had convicted him only of the lesser included offense of second degree murder (Green v United States, supra, at p 190). Thus, the Bullington court stated that Burks and Green stand for the proposition that Pearce “is inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case” (Bullington v Missouri, 451 US 430, 443, supra). Because the capital sentencing hearing in Bullington was like a *231 trial on the issue of punishment and the jury was required to determine whether the prosecution had “proved its case”, the court found that Burks and Green, rather than Pearce, applied and mandated the conclusion that the defendant’s sentence of life imprisonment at his first trial was an implicit acquittal of the death penalty (id., at pp 444-445). This implicit acquittal, like all acquittals, was entitled to absolute finality, the court said, because the “embarrassment, expense and ordeal” and the “anxiety and insecurity” that the defendant faced at the punishment phase of his first trial was at least as great as that faced at the guilt phase of his trial (id., at p 445).
Similarly, in Arizona v Rumsey (467 US 203,104 S Ct 2305, 81 L ed 2d 164, supra), the Supreme Court concluded that the double jeopardy clause prohibited the State of Arizona from sentencing the defendant to death after his original sentence of life imprisonment was set aside. Arizona, like Missouri, provides a bifurcated proceeding in cases involving capital murder. Following conviction, the Trial Judge conducts a separate sentencing hearing without a jury to determine whether death or life imprisonment without possibility of parole for 25 years is the appropriate punishment. The prosecution has the burden of proving beyond a reasonable doubt the existence of at least one statutory aggravating circumstance and that mitigating circumstances, if any exist, are not sufficiently substantial to call for leniency. If it does so, imposition of the death penalty is mandatory (id.; Arizona v Rumsey, 467 US_, 81 L ed 2d 164, 169, 170-171, supra). The Supreme Court found “the Arizona capital sentencing proceeding indistinguishable for double jeopardy purposes from the capital sentencing proceeding in Missouri” and therefore concluded that its decision in Bullington “squarely controlled] the disposition of this case” (id., at pp_, _, at pp 171, 167).
Defendant asserts that the rationale of Bullington and Rumsey is sufficiently broad to apply to New York’s persistent felony offender and second felony offender proceedings and bar the prosecution from seeking a determination that he is a second felony offender on the basis of convictions it failed to prove at his earlier persistent felony offender hearing. We find significant reasons, however, for refusing to extend Bullington to the New York enhanced sentencing procedures.
Most importantly, there is a fundamental difference between the imposition of the death penalty for capital murder in Bullington and Rumsey and the imposition of enhanced sentences for felons who have a record of prior felony convictions. Essen *232 tially, the punishment of death is part and parcel of the substantive offense of capital murder (see, Linam v Griffin, 685 F2d 369, 375 [10th Cir], cert denied 459 US 1211) in which the existence of certain aggravating circumstances elevate the crime charged from murder punishable by life imprisonment to murder punishable by death. Nine of the 10 aggravating circumstances which the prosecution could have placed before the jury in Bullington to determine whether the death penalty was appropriate concerned the manner in which the underlying murder had been committed, as were 6 of the 7 mitigating circumstances (see, Mo Rev Stat Ann former § 565.012 [2] [2]-[10]; § 565.012 [3] [2]-[7]). Similarly, 6 of the 8 aggravating circumstances and all 5 of the mitigating circumstances to be considered by the court in Rumsey in determining whether to impose death involved the gravity of the homicide committed (see, Ariz Rev Stat Ann § 13-703 [F] [3]-[8]; § 13-703 [G] [l]-[5]). The court implicitly recognized in these decisions that the death penalty was part of the substantive offense of murder. In Rumsey, the court stated unequivocally that the double jeopardy principle involved in both cases was that “an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge” (Arizona v Rumsey, 467 US 203, 81 L ed 2d 164, 171, supra [emphasis added]). In Bullington the court relied on Green v United States (355 US 184, supra) which involved the application of double jeopardy principles to the implicit acquittal of the greater offense upon conviction of the lesser-included offense. Thus, the factors to be considered by the Bullington and Rumsey fact finders in imposing the penalty of death were not unlike those typical, additional elements of a crime which elevate it to a higher class of offense and in such cases the protections afforded by the double jeopardy clause must be provided (cf. Brown v Ohio, 432 US 161).
To contrast, New York’s persistent felony offender and second felony offender statutes are concerned solely with a defendant’s prior criminal record, and, in the case of a persistent felon, “factors in the defendant’s background and prior criminal conduct which the court deems relevant for the purpose of sentencing the defendant as a persistent felony offender” (CPL 400.20 [3] [b]; see, Penal Law § 70.06 [1]; § 70.10 [1]). Manifestly, the Legislature did not intend these prior convictions to be used as aggravating elements of the substantive offense elevating it to a higher class because when it has sought to do so it has said so (see, e.g., Penal Law §§ 165.06,165.15,190.42,220.55, 235.06, 240.60, 240.31 [2]; § 265.01 [4]; § 265.02 [1]; § 265.02 [5] [ii]; *233 Vehicle and Traffic Law § 1192 [5]). As we have previously noted “[classification as a persistent felony offender [or second felony offender] is not a separate offense” and sentencing under the persistent felony offender and second felony offender statutes “does not change the class of the underlying conviction” (Matter of Roballo v Smith, 63 NY2d 485, 489, n 3; see, Penal Law §§ 70.06, 70.10).
This conclusion, that there is a qualitative and quantitative difference between imposition of the death penalty and sentencing as a persistent or second felony offender, is emphasized by the fact that the court’s decision in Bullington was based in part on its conclusion that “[t]he ‘embarrassment, expense and ordeal’ and the ‘anxiety and insecurity’ faced by a defendant at the penalty phase of a Missouri capital murder trial surely are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial” (Bullington v Missouri, 451 US 430, 445, supra). The same cannot be said, however, for a defendant facing sentence as a second felony offender or as a persistent felon where life imprisonment may result because, as this court has recognized, “death, ‘in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two’ ” (People v Smith, 63 NY2d 41, 72-73, quoting Woodson v North Carolina, 428 US 280, 305). This is especially so because death could have been imposed under the Missouri statute considered in Bullington on a first offender whereas New York’s persistent felon statute presupposes previous periods of substantial incarceration and the second felony offender law is predicated on a prior felony conviction. Thus, a defendant’s anxiety in facing an enhanced sentence under either law is necessarily diminished by his prior experience with the law. When enhanced sentencing only is involved, and not the death penalty, “[t]he defendant’s primary concern and anxiety obviously relate to the determination of innocence or guilt, and that already is behind him” (United States v DiFrancesco, 449 US 117, 136, supra).
Moreover, the distinction between death penalties and enhanced sentences is reasonable because death as a punishment is tied exclusively to commission of an underlying murder; enhanced punishment depends on prior felony convictions, which, together with one more felony conviction results in an increased sentence. The death penalty is crime specific but determinations of persistent felony offender and second felony offender status are generic to all felonies.[2]
*234 The Bullington court distinguished the case before it from traditional sentencing decisions by the amount of discretion vested in the trial court and the procedural safeguards accorded the defendant. The manner in which a persistent felony offender or second felony offender determination is made in New York, however, differs substantially from the method employed to determine if death was the appropriate sentence in Bullington and Rumsey. The sentencing Judge in New York retains far greater discretion than that possessed by the jury in Bullington and the Judge in Rumsey, discretion closer to that retained by the court when it makes traditional sentencing decisions. This is especially true for a persistent felon determination in which the court has broad discretion to: (1) decide whether to order a hearing notwithstanding any information it may have that defendant is a persistent felony offender (CPL 400.20 [2]); (2) terminate the hearing at any time during its pendency without making any findings (id. 400.20 [10]);[3] and (3) refuse to impose a persistent felony offender sentence even when the evidence presented demonstrates that the defendant is a persistent felon and that sentence as such is warranted (CPL 400.20 [9]). Although the court’s discretion is somewhat less under the second felony offender procedure, it retains substantial discretion in fixing the terms of the indeterminate sentence to be imposed within statutory guidelines, contrary to Bullington and Rumsey in which only two alternatives, death or life imprisonment without parole for a significant period of time, were allowed (cf. Penal Law § 70.06 [2]-[4]). In addition, the court retains the discretion to sentence the most serious second felony offenders, class A-II and B, to lifetime probation (see, Penal Law § 70.06 [5])._
*235 Moreover, although New York’s enhanced sentencing statutes provide procedural safeguards for defendants, they are in many respects less like the procedural safeguards at trial than those employed in the death penalty statutes at issue in Bullington and Rumsey. In a persistent felony offender hearing, for example, the prosecution need only prove by a preponderance of the evidence that a defendant’s history and character and the nature and circumstances of his criminal conduct warrant persistent felon treatment and it is not constrained by the rules of evidence applicable to a trial but may offer any legally relevant evidence (see, CPL 400.20 [5]; see also, Bullington v Missouri, 451 US 430, 441, supra; United States v DiFrancesco, 449 US 117, 136-137, supra). The defendant is required to specify the particular allegations in the persistent felon statement that he wishes to controvert and if he intends to present evidence at the hearing he must specify the nature of the evidence to be presented (see, CPL 400.20 [7]). Uncontroverted allegations in the statement of the court are deemed evidence in the record (id.). Finally, when uncontroverted allegations in the court’s statement are sufficient to support a finding that the defendant is a persistent felony offender and in the court’s opinion he should be sentenced as such, the court may impose sentence if the defendant either has no relevant evidence to present or the evidence to be presented would not affect the court’s decision (CPL 400.20 [8]). Similarly, under the second felony offender law, the defendant must specify the particular allegations that he wishes to controvert in the predicate felony statement. Unless he does so, the allegations are deemed admitted (CPL 400.21 [3]) and may serve as the basis for imposition of a second felony offender sentence without a full hearing (see, CPL 400.21 [4]). Additionally, the brief two-day notice period required before the hearing indicates that the proceeding is more formalistic than it is substantive (see, CPL 400.21 [6]).
The decisions from other jurisdictions relied on by defendant which have applied Bullington to their habitual criminal statutes are distinguishable from the case before us and the result in each follows logically from the rationale we have employed. In each case, not only did the sentencer retain substantially less discretion than that possessed by the court under New York’s enhanced sentencing procedures but, more importantly, the prior felony convictions were treated as substantive elements of the offense charged that had to be alleged in an information or indictment (see, Bullard v Estelle, 665 F2d 1347,1349, n 2,1357-1358 [5th Cir], cert granted 457 US 1116, vacated 459 US 1139, *236 on remand 708 F2d 1020; People v Quintana, 634 P2d 413, 417, and n 2, 419 [Col]; Ex parte Augusta, 639 SW2d 481, 484 [Tex Crim App]; State v Hennings, 100 Wn 2d 379, 382-384, 388-390, 670 P2d 256, 258, 261).[4] The habitual offender laws involved in these cases are analogous to the New York offenses previously mentioned in which a prior conviction is an element of the offense charged which must be alleged in a special information annexed to the defendant’s indictment {see, CPL 200.60 [2]). Notably, other jurisdictions have refused to apply the decision in Bullington to the habitual criminal statutes of other States on grounds similar to those relied upon here (see, Linam v Griffin, 685 F2d 369 [10th Cir], cert denied 459 US 1211, supra; Dixon v State, 437 NE2d 1318 [Ind]; State v Lee, 660 SW2d 394 [Mo Ct App]; see also, People v Maldonado, 82 AD2d 576, lv denied 55 NY2d 751 [dictum]).
It is unnecessary to decide in this appeal whether the prosecution may conduct more than one persistent felony offender or second offender hearing in the same sentencing proceeding after failing to prove the underlying convictions or conviction. The second persistent felony hearing was constitutionally permissible in this case (see, North Carolina v Pearce, 395 US 711, 720, supra; United States v Tateo, 377 US 463, 465-466) and constitutional double jeopardy requirements did not bar a second felony offender proceeding after a failure of proof in the second persistent felony proceeding.
Practical considerations also warrant our conclusion because arguably extension of the double jeopardy clause to enhanced sentencing proceedings such as New York’s persistent felony offender and second felony offender hearings would seemingly mean that a failure to prove a defendant’s previous felony conviction for any reason, even prosecutorial mistake or carelessness, unrelated to the truth of such prior convictions, which are matters of public record, would forever bar the use of that prior conviction in any subsequent enhanced sentencing proceeding.
Ill
Finally, defendant contends that his 1969 conviction in Florida for attempted robbery is not an appropriate predicate felony *237 conviction for purposes of sentencing him as a second felony offender in New York. To qualify as such, the out-of-State conviction must be for an offense that carries with it a sentence of imprisonment in excess of one year and for which New York law would also authorize imposition of a sentence in excess of one year (Penal Law § 70.06 [1] [b] [i]; see, People v Gonzalez, 61 NY2d 586, 589). In other words the out-of-State conviction must be for an offense which if committed in New York would be a felony (People v Gonzalez, supra, at p 589). Defendant contends that his Florida conviction for attempted robbery would amount to no more than attempted grand larceny in the third degree in New York, a misdemeanor (see, Penal Law § 155.30 [5], [6]; § 110.05 [7]).
The Florida robbery statute under which defendant was convicted provided: “Whoever, by force, violence or assault or putting in fear, feloniously robs, steals and takes away from the person or custody of another, money or other property which may be the subject of larceny, shall be *** punishable by imprisonment in the state prison for life or for any lesser term of years, at the discretion of the court” (Fla Stat Ann former § 813.011). Defendant interprets this statute as authorizing a conviction where the victim is only put in fear and has his property taken away btit the criminal does not actually use force as required under New York’s third degree robbery statute (see, Penal Law §§ 160.00, 160.05). Defendant’s reliance on Flager v State (198 So 2d 313 [Fla]) for this interpretation is unfounded because in that case the Supreme Court of Florida held no more than that outward manifestations of fear are not required to show that the victim had been put in fear; it did not address the issue raised here. In McCloud v State (335 So 2d 257 [Fla]), however, it did address this issue and held that force was required to convert larceny to robbery {id., at pp 258-259). Thus, defendant’s conviction of attempted robbery in Florida was at least the equivalent of a conviction in New York of attempted robbery in the third degree, a class E felony {see, Penal Law §§ 160.05,160.00,110.05 [6]), and he was properly sentenced as a second felony offender.
Accordingly, the order of the Appellate Division should be affirmed.

. After the defendant in Bullington was sentenced to life imprisonment, his motion for a new trial was granted on the basis of Duren v Missouri (439 US 357) in which the United States Supreme Court held that Missouri’s automatic exemption for women from jury service violated the 6th and 14th Amendments.

. The dissent maintains that we have obscured the rationale of Bullington “by stating the question as whether the factors at issue at the sentencing *234 proceeding are related to the substantive offense.” (Dissenting opn, at p 239.) The issue clearly is whether double jeopardy principles are applicable to New York’s enhanced sentencing proceedings. We find it significant, however, in distinguishing Bullington and Rumsey, that those cases involved bifurcated death penalty proceedings in which the determinative sentencing factors were so closely related to commission of the underlying offense of murder that the punishment imposed was essentially part of the offense.

. Contrary to the position taken by the dissent (see, dissenting opn, at p 241), the Legislature expressly provided that the court has discretion to terminate the persistent felony offender hearing “[a]t any time during the pendency of a hearing” (CPL 400.20 [10]; emphasis added; see, Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 400.20, p 228; Pitler, New York Criminal Practice Under the CPL, at 733). This includes, of course, the discretion to terminate the hearing without making a finding whether the defendant is a persistent felon as well as terminating the hearing prior to a determination whether the defendant’s history and character warrant an enhanced sentence.

. The United States Supreme Court vacated the Fifth Circuit’s decision in Bullard v Estelle (665 F2d 1347), which involved application of Texas’ habitual offender law, because after it had granted certiorari the Texas Court of Criminal Appeals decided, as a matter of State constitutional law, that Bullington was applicable to habitual offender proceedings in Texas (see, Ex parte Augusta, 639 SW2d 481).