Ordie CONEY, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, and Mark Headlough, an individual and in his capacity as an officer of the Municipality of Anchorage, Appellees.

No. S–842.

Supreme Court of Alaska.

Oct. 3, 1986.

Rehearing Denied Nov. 26, 1986.

William J. Donohue, Kennelly, Azar & Donohue, Anchorage, for appellant.

Burton C. Biss, Biss & Holmes, Wasilla, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

OPINION

BURKE, Justice.

This is an appeal from a grant of summary judgment in a civil action brought by Ordie Coney against the Municipality of Anchorage and police officer Mark Headlough. Coney sued for injuries sustained during his arrest for robbery. Coney was injured when Headlough's pistol discharged.

In his prosecution for robbery, Coney moved to suppress all evidence seized during the arrest, including his identity, on the ground that Headlough used excessive force. Coney, however, did not testify at the suppression hearing. The court found that the force used was not excessive and denied Coney's motion. Coney was eventually convicted of robbery.

Coney then brought a civil action against Headlough and the Municipality (collectively "Municipality") alleging again that Headlough used excessive force during the arrest. The Municipality moved for summary judgment, arguing that Coney was collaterally estopped from relitigating the issue of excessive force because that issue had been determined against him in the suppression hearing. The superior court agreed and entered judgment in favor of the Municipality. Coney appeals. We reverse since Coney did not receive a full hearing on the excessive force issue.

DISCUSSION

Collateral estoppel is a rule, based primarily on considerations of judicial economy, which precludes a party from trying

the same issue in more than one lawsuit.[1] The Restatement (Second) of Judgments § 27 (1982), states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

We have not previously decided whether a ruling from a pretrial suppression hearing may be used for collateral estoppel purposes in a subsequent civil action. In *Scott v. Robertson*, 583 P.2d 188 (Alaska 1978), we addressed the broader issue of whether a prior criminal conviction following trial and arising from the same facts may be admitted at a civil trial as evidence of a material fact on which the conviction rested. *Id.* at 190. We followed the trend to admit criminal convictions under certain narrow circumstances. *Id.* at 191. We indicated that a criminal conviction may be admitted in subsequent civil trials where:

> (1) the prior conviction is for a serious criminal offense; (2) the defendant in fact had a full and fair hearing; and (3) it is shown that the issue on which the judgment is offered was necessarily decided in the previous trial.

*Id.* at 191–92 (footnotes omitted). Ultimately, we held that a conviction for driving under the influence of alcohol could be admitted in the case then before us because it was a serious crime, there was no indication that there had not been a full and fair hearing on the criminal matter, and it was "clear that the jury necessarily determined that the defendant was operating a motor vehicle while under the influence of an intoxicant; otherwise it could not have returned a verdict of guilty to the charge." *Id.* at 191–92 (footnotes omitted). These minimal standards, however, have not been met in the case at bar.

The trial court implicitly relied on *Teitelbaum Furs v. Dominion Insurance*, 375 P.2d 439 (Cal.1962), *cert. denied*, 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 130 (1963), to hold that Coney was barred from relitigating the excessive force issue. Such reliance is misplaced. In *Teitelbaum*, the California Supreme Court held that "[u]nder these circumstances ... any issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action." *Id.* at 441–42. The court noted, however, that the criminal defendant "was afforded a full opportunity to litigate the issue of his guilt with all the safeguards afforded the criminal defendant, and ... had every motive to make as vigorous and effective a defense as possible." *Id.* at 441.

In contrast, Coney had reason not to assert vigorously the excessive force issue at the suppression hearing. The requirement that the prior conviction be for a serious criminal offense insures "that the accused have the motivation to defend himself fully." *Scott*, 583 P.2d at 192 (footnote omitted). While robbery is a serious criminal offense, it is the incentive that Coney may have had to testify at the *suppression hearing* which we must examine.

A criminal defendant is, of course, motivated to win a suppression hearing since a favorable ruling there may well obviate the need for a trial. Presumably, Coney brought the motion to suppress hoping to win a favorable ruling.[2] However, if in order to win the suppression hearing, the defendant must employ tactics which would harm his chances for acquittal at trial, he may not litigate the suppression issue to the fullest extent. Here, Coney apparently believed that taking the stand at the suppression hearing could prove detrimental to his chances of ultimately prevailing at trial.

**1.** 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.443[1], at 758 (2d Ed.1984).

**2.** Of course, defendants may move to suppress for other reasons, even if their chances for initially winning a favorable ruling are slim. For example, they may hope to establish some grounds for a future appeal, or wish to establish a record in case a higher court modifies some aspect of criminal procedure law while the case is pending.

Arguably Coney would not have waived his Fifth Amendment privilege against self-incrimination by testifying, because testimony given in support of a motion to suppress cannot be admitted as evidence of guilt. *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247, 1259 (1968). However, the United States Supreme Court has explicitly reserved the question of whether a defendant's suppression hearing testimony can be used for other purposes. *United States v. Salvucci*, 448 U.S. 83, 94, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619, 629–30 (1980). In *Salvucci*, the Court acknowledged, without disapproval, that the prosecution's access to information revealed by suppression hearing testimony could provide the prosecution with an advantage in trial preparation. 448 U.S. at 93 n. 7, 100 S.Ct. at 2554 n. 7, 65 L.Ed.2d at 629 n. 7. The court noted without comment that a number of courts use a defendant's suppression hearing testimony for impeachment purposes. *Id.* at n. 8. Justice Marshall, dissenting in *Salvucci*, points out that *Simmons* does not completely protect against the self-incrimination dilemma. 448 U.S. at 95–97, 100 S.Ct. at 2554–57, 65 L.Ed.2d at 630–32 (Marshall, J., dissenting). He argues that furnishing a tactical advantage to the prosecution should not be the price for asserting a Fourth Amendment claim. *Id.* at 96–97, 100 S.Ct. at 2555, 65 L.Ed.2d at 631. Likewise, we believe defendants should not be forced to choose between providing a tactical advantage to the prosecution and attempting to vindicate their civil rights in a subsequent civil action.

The California court in *Teitelbaum* rejected the defendant's argument that the election not to testify at the criminal trial made collateral estoppel inapplicable. *Teitelbaum*, 375 P.2d at 442. That court found that Teitelbaum's decision "was presumably made on the assumption that he would benefit thereby." *Id.* This tactical choice was made in the context of the final trial on the merits, not at a preliminary hearing. Teitelbaum was not faced with the choice between winning the battle of the suppression hearing or winning the war

of trial. The court specifically noted the importance of the felony charge, because it noted that the defendant had every motive to defend as vigorously and effectively as possible. *Id.* at 441.

Numerous courts give criminal suppression hearing decisions, adverse to the defendant, collateral estoppel effect in subsequent civil litigation where a conviction followed the suppression hearing. *Searing v. Hayes*, 684 F.2d 694, 696–97 (10th Cir. 1982); *Lucien v. Roegner*, 574 F.Supp. 118, 120–21 (N.D.Ill.1983); *Weinstein v. Mueller*, 563 F.Supp. 923, 929 (N.D.Cal.1982); *Lomax v. Smith*, 501 F.Supp. 119, 121–23 (E.D.Pa.1980); *Nash v. Reedel*, 86 F.R.D. 13, 15 (E.D.Pa.1980); *Manis v. United States*, 467 F.Supp. 828, 830 (E.D.Tenn. 1979); *Rodriguez v. Beame*, 423 F.Supp. 906, 908 (S.D.N.Y.1976) (where the defendant testified at the pretrial hearing); *Matter of One 1974 Mercedes Benz*, 592 P.2d 383, 386 (Ariz.App.1979). However, none of these cases discuss the problem of conflicting motivation or consider whether collateral estoppel should apply when the defendant does not testify at the suppression hearing.

Another court has recognized the inherent problem a defendant faces in deciding whether to testify at a suppression hearing. In *People v. Plevy*, 52 N.Y.2d 58, 436 N.Y.S.2d 224, 417 N.E.2d 518 (1980), the New York Court of Appeals held that the decision at a suppression hearing could not preclude relitigation of that issue at a subsequent criminal trial where the defendant did not testify at the suppression hearing. That court reasoned that the defendant had legitimate reasons for *not* testifying at the first hearing. *Id.* 436 N.Y.S.2d at 229, 417 N.E.2d at 523. It rejected the argument "that the seriousness of a murder charge provided sufficient incentive ... to fully litigate at every stage, especially prior to trial where a favorable determination might eliminate [the necessity of trial]." *Id.* It presented a contrary theory.

[The] seriousness of the charge may well have the opposite effect of discouraging the defendant from testifying or reveal-

ing the nature of his case at preliminary proceedings for fear that his testimony may somehow aid the prosecution in obtaining a conviction at trial. Thus, from a practical viewpoint, the defendant faced a risk at the first hearing, in the murder case, that he did not face at the hearing in this case, at which point he attempted for the first time to fully litigate the consent issue by offering to testify on his own behalf.

The defendant's decision not to testify at the first hearing but to do so in this case was a legitimate one. Constitutionally the accused has the right to testify or not to testify at any criminal action or proceeding. The doctrine of collateral estoppel cannot be said to be superior to those rights, particularly when it operates to preclude the court from considering evidence which was not available to the court at the prior proceeding....

*Id.,* 436 N.Y.S.2d at 228–29, 436 N.E. at 522–23.[3]

The decision not to testify must be viewed in the context of "the 'realities of the [prior] litigation.'" *Plevy,* 436 N.Y. S.2d at 228, 417 N.E.2d at 522 (citations omitted, brackets in original). When a defendant is faced with the tactical dilemma of whether to invoke his Fifth Amendment rights at a suppression hearing, the decision should not be at the cost of the right to attempt to vindicate his later civil rights. The conflicting motivations inherent in that decision may prevent the defendant from fully litigating at the suppression hearing.

We recognized in *Scott* that a conviction is not a bar when a party had an incentive not to fully litigate the relevant issue in the criminal proceeding. *Scott,* 583 P.2d at 192 n. 16 & accompanying text. Even courts which give preclusive effect to a suppression hearing decision recognize that special circumstances may require relitigation. *See, e.g., Lucien,* 574 F.Supp. at 120–21; *see also* Restatement (Second) of Judgments § 28(5)(c). Giving preclusive effect to a decision at a suppression hearing in

which a defendant does not testify improperly forces criminal defendants to choose between their rights at the criminal trial and their right to a subsequent civil action.

Therefore we REVERSE the trial court's ruling and REMAND the case for proceedings consistent with this opinion.

MOORE, J., not participating.

---

**3.** Even though *Plevy* involved a subsequent criminal action we believe the reasoning is

sound and applies equally to subsequent civil actions.