PEOPLE v GOSS (AFTER REMAND)

Docket No. 97021. Argued January 12, 1994 (Calendar No. 10). Decided August 29, 1994. Certiorari denied by the Supreme Court of the United States on April 17, 1995, 514 US — (1995).

Darryl S. Goss was convicted by a jury in the Detroit Recorder's Court, Leonard Townsend, J., of armed robbery, first-degree felony murder, two counts of first-degree criminal sexual conduct, and kidnapping. The Court of Appeals, WAHLS, P.J., and McDONALD and C. W. SIMON, JR., JJ., affirmed in an unpublished opinion per curiam (Docket No. 99743). The Supreme Court affirmed the conviction of armed robbery, but reversed the felony-murder conviction on the ground that the instructions to the jury omitted the intent requirement for aiding and abetting, and remanded for a new trial. 437 Mich 1021 (1991). On remand, the court, George W. Crockett, III, J., denied the prosecutor's motion in limine for an order to bar relitigation of the underlying charge of armed robbery, and an instruction of the jury that, because the defendant previously had been found guilty of armed robbery, its only responsibility was to determine whether he also was guilty of aiding and abetting the murder that occurred during the armed robbery. The Court of Appeals, SHEPHERD and FITZGERALD, JJ. (GRIFFIN, P.J., dissenting), affirmed, stating that it was persuaded that the defendant's constitutional right to a trial by jury overrides the affirmative use of collateral estoppel to establish facts pertaining to an essential element of an offense in a subsequent criminal prosecution. It held further that, although all the elements of collateral estoppel were present, the right to trial by jury entitled the defendant on retrial to have the new jury decide the facts and determine his guilt or innocence with respect to all the elements of felony murder (Docket No. 147711). The people appeal.

In an opinion by Justice LEVIN, joined by Chief Justice CAVANAGH, and an opinion by Justice BRICKLEY, joined by Justice MALLETT, the Supreme Court *held:*

Collateral estoppel or res judicata may not be applied in a criminal case to establish as a matter of law an essential element of a compound offense by accepting as the predicate

offense a valid conviction of an underlying felony in a separate trial.

Justice LEVIN, joined by Chief Justice CAVANAGH, stated that the doctrines of res judicata and collateral estoppel cannot be invoked to preclude a defendant in a criminal case from contesting an essential element of a charge. When an accused is charged with an offense that has as an element commission of a predicate offense, the jury's initial consideration of the predicate offense and its further consideration in the context of a compound offense are separate and distinct. The jury's decision regarding the predicate offense does not preclude it from reaching a different conclusion in the context of the compound offense.

The rights of a person accused of a felony to trial by jury and to due process of law include the right to determination by the jury whether the prosecution has proven beyond a reasonable doubt *every* element of the charge. The court may not direct a verdict either in whole or in part. Whenever a defendant is charged with different crimes that have identical elements, the jury must make an independent evaluation of each element of each charge. However, the jury may reach different conclusions concerning an identical element of two different offenses.

The jury in the defendant's first trial could have found that the prosecutor did not establish the defendant's guilt of the armed-robbery element of the felony-murder charge and, at the same time, found him guilty of armed robbery. Because the first jury's verdict with respect to the armed-robbery charge would not have precluded it from considering afresh the armed-robbery element of the felony-murder charge, that verdict does not estop the defendant from relitigating, or preclude the second jury from considering afresh, the armed-robbery element of the felony-murder charge. Estopping the defendant from contesting the armed robbery charge would prevent the second jury from making its own independent evaluation of the armed-robbery element of felony murder, and therefore would be the equivalent of partially directing a verdict against him.

The application of collateral estoppel against a defendant in a criminal case constitutes an invasion of the fact-finding and ultimate decisional functions of the jury. If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. The right to a jury trial necessitates that every jury empaneled for

a prosecution consider evidence of guilt afresh and without the judicial direction attending collateral estoppel.

Estopping Goss from contesting the armed-robbery charge would not spare the victims of these crimes appreciable additional inconvenience or discomfort. If Goss were to be precluded from contesting the armed-robbery element of the felony-murder charge, he would be effectively precluded from presenting his primary defense of mistaken identity.

Justice BRICKLEY, joined by Justice MALLETT, concurring, stated that use of a valid armed-robbery conviction to establish an element in a subsequent prosecution for felony murder would not violate the Sixth Amendment right to an impartial jury. However, application of collateral estoppel or res judicata in the retrial of this case would impermissibly disable the presumption of innocence an accused is entitled to in accordance with due process guaranteed under the federal and state constitutions. Invocation of the principles of collateral estoppel or res judicata as a bar to relitigation is inappropriate when applied against a criminal defendant to essential elements of a crime arising out of the same transaction. A criminal defendant's due process right to a fair trial, in which there is a presumption of innocence and the requirement that the state prove every element of the charge beyond a reasonable doubt, outweigh any interest in judicial economy and efficiency asserted by the prosecutor.

Knowledge of a prior conviction of the underlying felony coupled with an instruction that the conviction conclusively establishes that the defendant committed that act, will almost inevitably taint the jury's view of whether the defendant committed the remaining acts necessary for conviction of felony murder. The jury determination of guilt on all elements of a crime cannot be seen as a mechanistic, formulaic calculation. Each element is not determined independent of the other necessary factual determinations, nor should it be. The whole may not equal the sum of the parts. The collective, deliberative determination of one fact likely influences the consideration and resolution of others. The presence or absence of one element of a crime may change the way a jury approaches a case. The risk is simply too high that the jury will not presume innocence once it is informed of the determination of guilt of the armed robbery.

Affirmed.

Justice RILEY, joined by Justices BOYLE and GRIFFIN, dissenting, stated that res judicata or collateral estoppel bars relitigation of the armed-robbery conviction in this case; the defendant

was afforded his constitutional rights during his armed-robbery trial, and, despite the use of the conviction on retrial, will again be afforded all his constitutional rights.

Collateral estoppel and res judicata may be applied against a criminal defendant. Precluding the defendant from relitigating the elements of armed robbery will not remove significant facts from the jury or create a strong tendency toward a guilty verdict in violation of his right to a jury trial, the presumption of innocence, or proof beyond a reasonable doubt. The jury simply would be relieved from finding that all the elements of armed robbery are satisfied. The defendant had his day in court with respect to his armed-robbery conviction and will once again have his right to a jury trial with respect to felony murder.

200 Mich App 9; 503 NW2d 682 (1993) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training, and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

*Angela Palmieri* for the defendant.

### AFTER REMAND

LEVIN, J. Darryl Steven Goss was convicted of armed robbery[1] and first-degree felony murder.[2] This Court affirmed the armed-robbery conviction[3] but reversed the felony-murder conviction on the ground that the instructions to the jury omitted the intent requirement for aiding and abetting, and remanded the case to the Detroit Recorder's Court for a new trial on the felony-murder charge.[4] The question presented is whether Goss is

---

[1] MCL 750.529; MSA 28.797.

[2] MCL 750.316; MSA 28.548.

[3] This Court also affirmed Goss' convictions of two counts of assault with intent to commit murder (MCL 750.83; MSA 28.278), kidnapping (MCL 750.349; MSA 28.581), and two counts of first-degree criminal sexual conduct (MCL 750.520b[1]; MSA 28.788[2][1]).

[4] 437 Mich 1021 (1991).

barred by the doctrines of res judicata and collateral estoppel from relitigating the issue whether he committed the armed robbery at a retrial for first-degree felony murder. We hold that he is not so barred, and that he may do so.

I

Before the new trial, the prosecutor moved for an order in limine barring relitigation of the underlying charge of armed robbery, and seeking an instruction of the jury that Goss had been found guilty of armed robbery and that the jury's responsibility was only to determine whether he was also guilty of aiding and abetting the murder that occurred during the commission of the armed robbery.[5]

Following denial of the motion, the prosecutor was granted leave to appeal. The Court of Appeals affirmed, stating that it was persuaded that Goss' "constitutional right to a trial by jury overrides the affirmative use of collateral estoppel to establish facts pertaining to an essential element of an offense in a subsequent criminal prosecution . . . ."[6] The Court said that, although all the

[5] The prosecutor argued at the hearing on the motion for an order in limine that under the doctrines of res judicata and collateral estoppel the judge should instruct the jury that the element of armed robbery has "already [been] proven." The prosecutor explained that once the jury was "advised that that element has been proven," the jurors "would focus simply on the remaining issue, which would be whether or not the Defendant aided or assisted in the commission of a murder during that armed robbery for which he already stands convicted."

[6] 200 Mich App 9, 20; 503 NW2d 682 (1993). One judge dissented.

The Court of Appeals discussed this Court's decision in *People v Gates,* 434 Mich 146, 154; 452 NW2d 627 (1990), in which this Court held that the people were not precluded from prosecuting the defendant for second-degree criminal sexual conduct although there had been a jury finding of no jurisdiction in probate court child protection proceedings.

elements of collateral estoppel were present, Goss' right to trial by jury entitled him "at retrial to have the new jury decide the facts and determine his guilt or innocence regarding all the elements of felony murder."[7]

The Court of Appeals adopted the reasoning of the Supreme Court of New Jersey in *State v Ingenito,* 87 NJ 204, 216-217; 432 A2d 912 (1981), and quoted the following statement of that court:

> [C]ollateral estoppel, applied affirmatively against a defendant in a criminal prosecution, violates the right to trial by jury in that not only does it seriously hobble the jury in its quest for truth by removing significant facts from the deliberative process, but it constitutes a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations. Hence, the collateral estoppel doctrine, which serves to establish virtually conclusive evidence of a critical element of criminal guilt, cripples the jury in the discharge of its essential responsibilities contrary to the constitutional guarantees of the jury right in a criminal trial.

The Court "explicitly reject[ed] the use of a balancing test under the rubric of due process in making this determination."[8] The dissenting Court

[7] *Id.,* p 21.

[8] The Court referenced the decision of the New Hampshire Supreme Court in *State v Johnson,* 134 NH 498, 503; 594 A2d 1288 (1991), and the decision of the New York Court of Appeals in *State v Plevy,* 52 NY2d 58, 64-66; 436 NYS2d 224; 417 NE2d 518 (1980), and said:

> It is inappropriate to determine the applicability of collateral estoppel case by case in terms of a balancing test weighing competing policy considerations because more is at stake than just a defendant's right to due process requiring the state to prove, beyond a reasonable doubt, every element of the charge against him. Accordingly, in the clash between the principle of

of Appeals judge relied on *People v Ford*, 65 Cal 2d
41; 52 Cal Rptr 228; 416 P2d 132 (1966), in which
the California Supreme Court held that it was not
error at a retrial for first-degree felony murder,
following reversal because of instructional error,
to instruct the jury that the defendant had been
convicted of robbery and other offenses.

## II

Goss was tried in March, 1987, on charges of
first-degree felony murder, assault with intent to
commit murder, first-degree criminal sexual con-
duct, kidnapping, and armed robbery.

The prosecutor's evidence tended to show that
Goss, John Nelson, Angelica Markopoulos, and
Jerry Aikens drove from the Detroit home of
Ronald Sherman to the Redford home of Ronald
Bonadeo to commit a robbery. When the four
arrived at Bonadeo's house, Goss began to work
under the hood of the car, and Nelson entered the
house. Nelson encountered Kristine Zambosco who
was babysitting Bonadeo's young child. Nelson
asked Zambosco where Bonadeo kept his gun, and
he then forced Zambosco upstairs and sexually
assaulted her.

As Nelson was sexually assaulting Zambosco,
Goss saw Bonadeo and two of his employees, Mi-
chael and Jeffrey Goers, arrive at the house in
Michael Goers' truck. The three men entered the
house.

Upon entering the house, Bonadeo noticed that
some of his possessions were out of place, and he
did not see Zambosco. Bonadeo told the Goers

collateral estoppel and the constitutional right to trial by jury,
collateral estoppel must give way to permit a defendant's
unfettered exercise of the constitutional right to trial by jury.
[200 Mich App 20.]

brothers that they should all leave the house immediately.

Bonadeo testified that as they sought to leave Goss blocked the doorway. The prosecutor claimed that Goss had become concerned that the three men would interfere with the robbery, and followed them into the house. Goss held a knife in his hand and ordered the men to lie, face down, on the ground. Goss then ordered the men to give him their wallets and jewelry, and they complied.

Goss next called for "Jack," Nelson's nickname. Nelson came down the stairs and assumed control of the three men. Goss left the house. Nelson then shot the three men in the head. Michael Goers died, and Jeffrey Goers suffered serious head injury and the loss of an eye. Bonadeo suffered only minor injury.

After the shooting, Goss, Nelson, Aikens, and Markopoulos left in Bonadeo's pickup truck with Goss driving. They forced Zambosco to accompany them back to Sherman's home in Detroit. When they arrived at Sherman's home, according to Zambosco, Goss sexually assaulted her.

The police arrested Goss at Sherman's house during the night the crimes were committed. They found Goss hiding under a basement stairwell near the wallets that had been stolen from Bonadeo and the Goers brothers.

Goss gave a different account. He testified that he was running a quick errand for his mother when he encountered his neighbor, Sherman. Sherman asked if Goss would accompany Markopoulos and Nelson to pick up a check in Redford. Goss had performed some mechanical work on Markopoulos' automobile earlier in the week, and Sherman asked Goss to accompany Nelson and Markopoulos because the two were worried that the automobile might break down. Goss

agreed to accompany Nelson and Markopoulos to Redford, and, as the three were leaving, Aikens joined them.

Goss testified that the automobile had not been running smoothly during the ride to Redford. When they arrived at Bonadeo's Redford home, Goss began to work under the hood of the automobile. According to Goss, Nelson and Aikens entered the house, and, after awhile, Aikens returned and asked Goss to pop the trunk of the automobile.

Goss testified that Bonadeo and the Goers brothers arrived while he, Aikens, and Markopoulos were outside in the vicinity of the automobile. He said that Aikens, not he, followed the three men into the house. Later, Aikens left the house, gave Goss the keys to Bonadeo's truck, and forced Zambosco into the truck. Aikens returned to the front door of the house. As Goss, Zambosco, and Markopoulos were waiting in the truck, they heard three gunshots. Nelson and Aikens then rejoined the three in the truck, and Goss drove the truck back to Sherman's house.

Goss denied knowing that Nelson, Aikens, and Markopoulos planned to commit a robbery at the Bonadeo house. He insisted that he did not enter the Bonadeo house, and he denied sexually assaulting Zambosco.

Goss' lawyer argued that the witnesses had misidentified Goss. He observed that, although Bonadeo claimed to be certain that Goss had forced him to the ground and robbed him, the clothes worn by Goss when he was arrested did not match the clothes that Bonadeo described his attacker as wearing.[9] Similarly, the lawyer argued that Zambosco's description of the clothes worn by the man

[9] The lawyer stressed in his closing argument that Bonadeo described the man who forced him to the ground as wearing all dark

who attacked her did not match the clothes worn by Goss.[10] Goss' lawyer also highlighted Zambosco's statement that "the only two people she saw in the house were Mr. Aikens and Mr. Nelson," and he noted that Goss' fingerprints were not found on any of the property taken from the house.

The jury found Goss guilty of felony murder, armed robbery, two counts of criminal sexual conduct in the first degree, and kidnapping. He was sentenced to nonparolable life in prison for felony-murder and concurrent forty- to eighty-year terms for the other convictions.

### III

The rights of a person accused of a felony to trial by jury and to due process of law include the right to determination by the jury whether the prosecution has proven beyond a reasonable doubt *every* element of the charge.[11] The judge may not direct a verdict either in whole[12] or in part.[13]

---

clothes. The lawyer said that Goss was wearing a pair of "light green pants or medium green pants" on the night of the robbery.

[10] Zambosco described her attacker as wearing a black jacket, Levis jeans, and tennis shoes. When Goss was arrested he was wearing green corduroys and work shoes.

[11] The United States Supreme Court said:

> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. [*In re Winship,* 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).]

[12] The United States Supreme Court recently said that "although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence." *Sullivan v Louisiana,* 508 US —, —; 113 S Ct 2078; 124 L Ed 2d 182, 188 (1993).

[13] The United States Court of Appeals for the Eleventh Circuit said:

The prosecutor insists that these commands would not be violated by applying the doctrines of res judicata or collateral estoppel against Goss because a jury has already found beyond a reasonable doubt that Goss committed an armed robbery.

Whenever a defendant is charged with different crimes that have identical elements, the jury must make an *independent* evaluation of each element of each charge. A jury in a criminal case may reach *different* conclusions concerning an *identical* element of two different offenses. *People v Lewis,* 415 Mich 443; 330 NW2d 16 (1982).

The defendants in *Lewis* were charged with committing a felony and with possession of a firearm during the commission of a felony. Although the jury was required to find beyond a reasonable doubt that the defendants had committed a felony before it could convict them of felony-firearm, the jury acquitted the defendants of the underlying felonies, but convicted them of felony-firearm. This Court affirmed the defendants' convictions although the jury's verdicts were inconsistent. We explained that a jury may reach inconsistent verdicts as a result of mistake, compromise,

---

The rule is firmly established that the trial judge cannot direct a verdict in favor of the government for all or even one element of a crime. The former Fifth Circuit emphatically stated this principle:

"[N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truth. In our federal system, the Trial Court may never direct a verdict either in whole or in part." [*United States v Goetz,* 746 F2d 705, 708 (CA 11, 1984).]

Similarly, see, *United States v Piche,* 981 F2d 706, 716 (CA 4, 1992) ("a judge in a criminal case may not direct a verdict, even a partial verdict, for the government even though the evidence is overwhelming or even undisputed on the point"); *United States v Kerley,* 838 F2d 932, 938 (CA 7, 1988) (recognizing the rule "against directing a verdict in whole or in part against a criminal defendant").

See also *People v Deneweth,* 14 Mich App 604; 165 NW2d 910 (1968) (LEVIN, J., concurring).

or leniency.[14] We also ruled that a trial judge should not instruct the jury that it must acquit on a felony-firearm charge if it acquits on the underlying charge.[15]

The United States Supreme Court similarly rejected a defendant's argument that because the jury had acquitted him of the predicate offenses this worked an estoppel precluding his conviction of the compound offense, an element of which was commission of the predicate felonies.[16]

[14] The Court built on its earlier decision in *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980), where the Court held that a jury could return inconsistent verdicts on charges of assault with a dangerous weapon and felony-firearm. The Court said:

> Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jurors reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and a conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility.

[15] The Court said:

> The judge may and should instruct the jury that a person cannot be convicted of felony-firearm unless the jury finds that "he commit[ted] or attempt[ed] to commit a felony." Because conviction of a felony or of an attempt to commit a felony is not an element of the offense, the jury may not be instructed that it must convict of an underlying felony in order to convict of felony-firearm. [*People v Lewis, supra*, p 455.]

[16] In *United States v Powell*, 469 US 57, 68; 105 S Ct 471; 83 L Ed 2d 461 (1984), the Court held that a defendant who was acquitted of the predicate felonies of conspiracy to possess cocaine and possession of cocaine was not entitled to reversal of her conviction of the compound offense of facilitating commission of narcotics offenses by telephone. Before the jury could find that the defendant facilitated the commission of narcotics offenses by telephone, it would have to find that the defendant committed one of the predicate offenses. The jury had acquitted on those predicate offenses.

We conclude that when an accused is charged with an offense that has as an element commission of a predicate offense the jury's consideration of the charged predicate offense and its consideration of that offense again in the context of a compound offense are separate and distinct. The jury's decision regarding the predicate offense does not preclude it from reaching a different conclusion in the context of the compound offense.

The jury in Goss' *first* trial, thus, could have found that the prosecutor did not establish Goss' guilt of the armed-robbery element of the felony-murder charge and at the same time have found Goss guilty of armed robbery.

Because the first jury's verdict on the armed-robbery charge would not have precluded the jury from considering afresh the armed-robbery element of the felony-murder charge, the first jury's verdict on the armed-robbery charge does not estop Goss from relitigation, or preclude the *second* jury from considering afresh, the armed-robbery

The Court rejected the defendant's argument that the jury's verdict on the predicate offenses worked an estoppel vis-à-vis the compound offense. The Court said:

> [R]espondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, *or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense,* the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. *The Government could just as easily—and erroneously —argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful.* [Emphasis added.]

element of the felony-murder charge. Estopping Goss from contesting the armed-robbery charge would prevent the second jury from making its own independent evaluation of the armed-robbery element of felony murder, and, therefore, would be the equivalent of partially directing a verdict against him.

IV

Our conclusion that the doctrines of res judicata and collateral estoppel cannot be invoked to preclude a defendant in a criminal case from contesting an essential element of a charge finds support not only in the decision of the New Jersey Supreme Court in *State v Ingenito,* relied on by the Court of Appeals, but also in a recent decision of the United States Court of Appeals for the Third Circuit, *United States v Pelullo,* 14 F3d 881 (CA 3, 1994).

In *Ingenito, supra,* pp 215-217, the New Jersey Supreme Court held that estopping a defendant from challenging an essential element of a charge would infringe on his right to trial by jury and violate his right to be presumed innocent.[17] The court said:[18]

The application of collateral estoppel against a defendant constitutes an invasion of the fact-

[17] Ingenito was charged with possession of a firearm by a convicted felon. He had previously been convicted of unlicensed transfer of weapons on the basis of conduct that arose out of the same transaction as the felon in possession charge. Instead of moving to estop Ingenito from litigating the possession issue, the prosecution moved to admit evidence of Ingenito's conviction for illegal transfer of the weapons. Ingenito argued that if this evidence were to be admitted, as a practical matter, it would work an estoppel on the possession issue. The New Jersey Supreme Court agreed, and its analysis proceeded on the assumption that admission of this evidence would operate as a collateral estoppel.

[18] See also text accompanying n 8.

finding and ultimate decisional functions of the jury. If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. It follows in such circumstances that the defendant's jury right will have been, commensurately, abridged. [*Ingenito, supra,* p 213.]

In *Pelullo,* the United States Court of Appeals for the Third Circuit adopted the *Ingenito* analysis and held that the doctrines of res judicata and collateral estoppel do not bar a defendant in a criminal case from contesting an essential element of the charge. The defendant had been convicted of forty-nine counts of wire fraud and one count of racketeering under the federal Racketeer Influenced and Corrupt Organization Act.[19] The defendant's convictions on all the counts except one of the wire fraud counts had been reversed. On remand, the defendant was retried on forty-eight counts of wire fraud and one count of RICO, and was convicted on all the counts.

The jury on remand was instructed that, "as a matter of law, the defendant has committed the wire fraud offense described in Racketeering Act 60 [the one count affirmed by the Third Circuit]. That means you don't have to consider whether the government has proved this offense." *Pelullo, supra,* p 887. Wire fraud was the predicate offense, an element of the RICO charge, just as armed robbery is the predicate offense and an element of the felony-murder charge against Goss.

The court in *Pelullo* held that precluding a defendant from contesting an essential element of a charge in this manner violated the defendant's Sixth Amendment right to trial by jury. The court

---

[19] 18 USC 1962.

explained that "one acceptable method of interpreting the Sixth Amendment right to a jury trial is to examine the historical practice of the United States and England at the time the Bill of Rights was ratified." The court attached significance to the government's inability to "point to any case on or before 1791 in which collateral estoppel was applied against an accused in a criminal case." *Id.,* p 893.

The court explained that its holding, grounded in the Sixth Amendment,

> [c]omports with and is supported by the uniformly accepted notion that in criminal cases there is no mechanism available to the government comparable to making a motion for directed verdict or summary judgment in civil cases. Indeed, no matter how strong and even overwhelming the evidence is, and although a judge can grant a judgment of acquittal in favor of the defendant before or even after the jury renders its verdict, see Fed.R.Crim.P 29, a criminal defendant in federal courts can be convicted only by the verdict of the jury. [*Id.,* p 895.]

The court summed up its holding:

> The right to a jury trial applies in every and all criminal prosecutions. We hold that such a right to a jury trial necessitates that every jury empaneled for a prosecution considers evidence of guilt afresh and without the judicial direction attending collateral estoppel. . . . As the New Jersey Supreme Court articulated, applying collateral estoppel against the defendant in a criminal case interferes with the power of the jury to determine every element of the crime, impinging upon the accused's right to a jury trial. Such an application is constitutionally invalid. [*Id.,* p 896.][20]

---

[20] The Florida Court of Appeals reached a similar conclusion, albeit

While the United States Supreme Court has not squarely addressed the question whether a criminal defendant may be estopped from contesting an essential element of a charged offense, there is reason to believe that the Court would not allow this use of collateral estoppel.[21] In *Simpson v Florida,* 403 US 384, 386; 91 S Ct 1801; 29 L Ed 2d 549 (1971), the Court held that where a defendant had been acquitted of robbing one person on the ground that the prosecution failed to produce sufficient identity evidence, the defendant could assert collateral estoppel in a trial for the robbery of a second person claimed to have occurred during the same transaction as the first robbery. The Court observed:

> And, had the second trial never occurred [i.e., had the prosecutor obtained a conviction for the

in dicta, in *State v Stiefel,* 256 So 2d 581, 585 (Fla App, 1972). The court explained that while a defendant could invoke collateral estoppel against the prosecution, the reverse would not be permitted. The court stated:

> The doctrine [collateral estoppel] cannot apply, however, when as here the issue has been resolved *against* the accused [in a prior proceeding]. This is so because if it were to be given any effect at all in such case the trial court in the subsequent prosecution could charge the jury, or consider as a matter of law, that such issue had been resolved as a true fact to the detriment of the accused. This would be impermissible, of course, under due *process considerations which* assure an accused a jury trial on *all* issues relating to each element of a given criminal charge. [*Id.* Emphasis in original.]

[21] As the excerpt from *United States v Powell,* n 16 *supra,* illustrates, the Supreme Court has *not permitted* a criminal defendant to assert collateral estoppel against the government where the jury acquits on a predicate offense and convicts on a compound offense of which the predicate offense is an element. If the Court will not allow a *defendant* to estop the jury from considering anew an element of one offense when it has not found that identical element in the context of another offense, it seems unlikely that the Court would allow the *government* to estop the jury from considering anew an element of one offense when it has found that element in the context of another offense.

robbery of the first person and then proceeded to try the defendant for the robbery of the second person that arose out of the same transaction], the prosecutor could not, while trying the case under review, *have laid the first jury verdict before the trial judge and demanded an instruction to the jury that, as a matter of law, petitioner was one of the armed robbers in the store that night.* [Emphasis added.]

More recently, in *United States v Dixon,* 509 US —,· —, n 15; 113 S Ct 2849; 125 L Ed 2d 556, 577, n 15 (1993),[22] Justice Scalia, writing for four justices, observed that "[u]nder *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970), an acquittal in the first prosecution might well bar litigation of certain facts essential to a second one *—though a conviction in the first prosecution would not excuse the Government from proving the same facts the second time."* (Emphasis added.)

While the New Hampshire Supreme Court in *State v Johnson,* 134 NH 498, 500-502; 594 A2d 1288 (1991), did not completely bar the application of collateral estoppel against a criminal defendant, it recognized the dangers of applying issue preclusion against a criminal defendant. The court noted "the inherent difficulty involved in applying a tool which originated in the civil law to the criminal setting." *Id.,* p 501. It held that a court must balance the state's interest in precluding a defendant from litigating an essential element of a

---

[22] In *Dixon,* the defendant had been released on bond on conditions that he not commit any criminal offense and that, if he committed a criminal offense, he would be subject to prosecution for contempt of court. While out on bond, the defendant committed a narcotics offense, and the judge that had granted the defendant bond found him in contempt of court. The defendant was then charged with the narcotics violation as a separate offense. He claimed that a trial on the narcotics charge violated the double jeopardy provision of the Fifth Amendment. The Court held that prosecution on the narcotics offense was not barred.

charge against the defendant's interests in having a jury consider all the elements of a charge.

The New Hampshire balancing test, it should be noted, seems clearly to accord more weight to a defendant's interests than to the state's interests in invoking estoppel. The court aligned itself with the "[m]any courts" that have "found that policy considerations generally weigh in the defendant's favor."[23] *Id.*, p 503.

V

The prosecutor relies on federal cases in which the defendant was charged with illegally entering the country. The courts held that the defendants were estopped from contesting their alienage where that issue had previously been decided adversely to them.[24]

In the alienage cases, the conduct that led to the second or subsequent prosecution occurred after the judicial determination that was held to have barred relitigation. In the instant case, as in *Ingenito, Pelullo,* and *Johnson,* the conduct preceded the judicial determination sought to be raised as a bar.

Federal courts invoked collateral estoppel in the

[23] In *Johnson,* the court held that the state could not preclude the defendant from contesting an essential element of the charge of operating a motor vehicle after his license had been revoked. The defendant testified that he had not operated the vehicle. The judge instructed the jury that to convict the defendant, it had to find that he operated the vehicle. The jury convicted the defendant, and the prosecutor charged the defendant with perjury. Before the perjury trial, the prosecutor asked the judge to instruct the jury that the prior conviction conclusively establishes that the defendant operated the vehicle. The trial court refused the request, and, on interlocutory appeal, the New Hampshire Supreme Court affirmed.

[24] E.g., *United States v Rangel-Perez,* 179 F Supp 619, 625 (SD Cal, 1959), *Pena-Cabanillas v United States,* 394 F2d 785, 786 (CA 9, 1968), *United States v Bejar-Matrecios,* 618 F2d 81 (CA 9, 1980), and *Hernandez-Uribe v United States,* 515 F2d 20, 21 (CA 8, 1975).

alienage cases to deter reentry into this country. In *United States v Rangel-Perez,* 179 F Supp 619, 626 (SD Cal, 1959), the court said:

> If the issue of alienage were to be tried each time a defendant makes an entry into the United States, after once having been found by judicial determination to be an alien, there would be less to deter future entries than at the present. Even though the present risk of prosecution for illegal entry would remain under 8 USC 1326, a defendant would have an added incentive to enter again and again, knowing that a trial de novo on the issue of alienage would be forthcoming and that such trial might, on one occasion, result in a favorable verdict. The Government would be estopped by any unfavorable verdict, and accomplishment of the objectives of the immigration laws to discourage and effectively control the already difficult problem of illegal entries into this country would thus be weakened. The Government should not be put to the expense and burden of proving the issue of alienage after one judicial determination has been made, each time an alien decides to reenter this country illegally.

In the instant case, in contrast, there is no danger that the failure to apply estoppel against Goss would result in great expense. Goss is not charged with the type of recurring violation that was at issue in the alienage cases. Thus, the principal rationale of the alienage cases does not apply in the instant case.[25]

The United States Court of Appeals for the Third Circuit in *Pelullo, supra,* pp 892-893, criti-

---

[25] Courts have declined to read the alienage cases as authority for applying collateral estoppel against a criminal defendant where there is no risk of costly repeated trials. See, e.g., *State v Johnson,* n 8 *supra,* pp 500-502; *State v Ingenito, supra,* p 218, n 7; *Gutierrez v Superior Court,* 24 Cal App 4th 153, 169-170; 29 Cal Rptr 2d 376 (1994).

cized the alienage cases as lacking constitutional
or historical analysis of the application of collat-
eral estoppel against criminal defendants, and
said:

> We do not accept the position of the Court of
> Appeals for the Ninth Circuit that "wise public
> policy and common sense judicial administration,"
> . . . are good and sufficient reasons to apply collat-
> eral estoppel against the defendant, thereby taking
> away a fact issue from the jury in a subsequent
> criminal case. . . . The Court of Appeals for the
> Ninth Circuit's application of this civil case ratio-
> nale in criminal cases presumably rests on the
> major premise that public policy and judicial effi-
> ciency have the same weight and value in criminal
> cases as in civil cases. Such an implicit premise
> does not hold.

The court noted that the United States Supreme
Court has consistently held that a defendant's
interest in vindicating himself in a criminal case,
an "interest of transcendent value," prevails over
other policy considerations,[26] and the court con-
cluded that "the liberty interest of a criminal
defendant takes priority over the usual concerns
for efficient judicial administration so often found
in civil proceedings." *Id.,* p 893. We agree with the
Third Circuit's view that "[t]he language of the
Sixth Amendment does not admit any indication
that the absolute right to a jury trial in criminal
cases can be modified by reasons of efficiency or
public policy arguments." *Id.,* p 895.

---

[26] The court observed that an accused's interest in vindicating
himself in a criminal trial has been held to transcend "the President
of the United States' general claim of absolute presidential
privilege . . . ; a state's important interest in preserving the anonym-
ity of juvenile offenders . . . ; and a patient's privacy interest in the
confidentiality of medical records and the societal interest in encour-
aging the free flow of information between patient and psychothera-
pist. . . ." *Id.,* p 893.

VI

The prosecutor relies heavily on *People v Ford,* *supra.* On facts similar to those in the instant case, the California Supreme Court held that, on retrial for felony murder, it was permissible to instruct the jury that the defendant had been convicted of robbery, kidnapping, and possession of a concealed weapon.

The California Court of Appeals recently distinguished *Ford* from cases like the instant one in *Gutierrez v Superior Court,* 24 Cal App 4th 153, 166-168; 29 Cal Rptr 2d 376 (1994). In *Gutierrez,* the defendant was convicted of attempted murder for his role in a shooting. The victim of the shooting later died, and the prosecutor charged Gutierrez with murder. The prosecutor moved to estop Gutierrez from contesting the issues of identity and intent on the ground that those issues had been conclusively decided against him in his first trial.

The court said that *Ford* was not controlling because, in *Ford,* the application of collateral estoppel did not prevent the defendant from presenting his diminished capacity defense to the felony-murder charge. Gutierrez, however, would have been precluded from presenting his main defense —*mistaken identity*—if he had been estopped from contesting the identity issue. Here, as in *Gutierrez,* and in contrast with *Ford,* the application of collateral estoppel would prevent Goss from presenting his primary defense to the charges.

The court in *Gutierrez* noted that the defendant in *Ford* did not raise a constitutional claim. The court said that *Ford* therefore does not stand for the proposition that applying collateral estoppel against a defendant is *constitutionally* permissi-

ble.[27] The court added that "[i]t must also be remembered that *Ford* was decided before *Ashe* and *Simpson* questioned the ability of the prosecution to invoke collateral estoppel against a criminal defendant." 24 Cal App 4th 168.

## VII

The prosecutor stated that the motion in limine for an order estopping Goss from contesting the armed-robbery element seeks to protect the victims of the crime from being required to again testify about the armed robbery.

Estopping Goss from contesting the armed-robbery charge would not spare the victims of these crimes appreciable additional inconvenience or discomfort. The prosecutor's felony-murder case against Goss is closely intertwined with, and indeed inseparable from, Goss' asserted involvement in the armed robbery. The prosecutor's felony-murder theory is that Goss forced Bonadeo and the Goers brothers to lie down on the floor at knifepoint and then summoned Nelson so that Nelson could kill them.

Bonadeo is essentially the only witness who can testify about these events. Thus, it is inescapable that Bonadeo will be required to testify concerning the trauma of being held down at knifepoint and shot in the head. Having Bonadeo give additional testimony concerning the theft of his wallet and jewelry while Goss had him on the ground would not appreciably increase the strain on Bonadeo when he testifies at a retrial.

If Goss were to be precluded from contesting the armed-robbery element of the felony-murder

---

[27] *Gutierrez* cited the dissenting opinion in the Court of Appeals in the instant case and indicated that the reliance there on *People v Ford* was misplaced.

charge, he would be effectively precluded from presenting his primary defense of mistaken identity. In *Ashe v Swenson, supra,* pp 464-465, Chief Justice Burger observed:[28]

> Very properly, in criminal cases, finality and conservation of private, public, and judicial resources are lesser values than in civil litigation. Also, courts that have applied the collateral-estoppel concept to criminal actions would certainly not apply it to *both* parties, as is true in civil cases, i.e., here, if Ashe had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the *identification* issue at the second trial. [Emphasis in original.]

The prosecutor's theory of felony murder, once again, is that Goss forced Bonadeo and the Goers brothers to lie down on the ground and then summoned Nelson to kill them. Goss does not deny that someone forced the three men to the ground and held them there until Nelson arrived. Goss argues rather that the witnesses who identified him as the assailant are mistaken.

Affirmed and remanded to the Recorder's Court.

CAVANAGH, C.J., concurred with LEVIN, J.

BRICKLEY, J. (*concurring*). I agree with the majority that this Court should decline the prosecutor's invitation to allow the application of collateral estoppel or res judicata in a criminal case to conclusively establish an essential element as a matter of law in the retrial of the felony-murder conviction by instructing the jury to accept the valid conviction of armed robbery obtained in the first trial as the underlying felony.

---

[28] The Chief Justice wrote in dissent in *Ashe v Swenson,* but his observations, nevertheless, are pertinent to the issue here presented.

I write separately because I do not agree with the majority's conclusion that the constitutional right to an impartial jury, US Const, Am VI,[1] would be violated by the use of a valid armed-robbery conviction to establish an element in a subsequent prosecution for felony murder.

I do, however, believe the application of collateral estoppel or res judicata in the retrial of this case would impermissibly disable the presumption of innocence an accused is entitled to in accordance with due process guaranteed under the federal and state constitutions.[2] Invocation of the principle of collateral estoppel or res judicata as a bar to relitigation is inappropriate when applied against a criminal defendant to essential elements of a crime arising out of the same transaction. A criminal defendant's due process right to a fair trial, in which there is a presumption of innocence and the requirement that the state prove every element of the charge beyond a reasonable doubt, outweigh any interest in judicial economy and efficiency asserted by the prosecutor.

I

The defendant was convicted by a jury of first-degree felony murder,[3] assault with intent to commit murder, first-degree criminal sexual conduct, kidnapping, and armed robbery. This Court reversed the first-degree felony murder conviction by order, declaring error in the jury instruction regarding the omission of intent required for aiding and abetting. A retrial was ordered on the felony-murder charge. All other convictions were affirmed.

---

[1] See the dissenting opinion, pp 629-630 for the text of the United States Constitution.

[2] US Const, Am XIV, and Const 1963, art 1, § 17.

[3] MCL 750.316; MSA 28.548.

During a pretrial motion hearing, the prosecution made the following request to the trial judge:

"[M]y motion is essentially that the jury in Mr. Goss' felony murder trial should be instructed that the element of armed robbery necessary for the jury to convict him of felony murder has already been proven and that it's not an issue for them to decide . . . the Defendant has had that element already proven, and that the jury in this trial should be advised that that element has been proven. And then they would focus simply on the remaining issue, which would be whether or not the Defendant aided or assisted in the commission of a murder during that armed robbery for which he already stands convicted.

*    *    *

So in this regard I think that we have met our burden already of proving that particular element. Defendant does not have a right to have two juries make that same decision.

II

Res judicata has been applied in the civil context to bar relitigation of an issue adjudicated in the same cause of action. *Jones v Chambers,* 353 Mich 674, 680-681; 91 NW2d 889 (1958). Collateral estoppel bars relitigation of factual determinations reached in a different cause of action. *Id.*

Where asserted against the government by criminal defendants, the Fifth Amendment double jeopardy claim,[4] has been viewed as the constitutional embodiment of the doctrine of collateral estoppel. *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970). Where it can be determined from a prior decision to acquit that an issue of ultimate

---

[4] Applicable to the states through the Fourteenth Amendment. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

fact has been resolved in favor of the defendant, the prosecution is foreclosed by the constitutional bar of double jeopardy from entertaining a subsequent prosecution that would relitigate that issue of ultimate fact. *Id.,* pp 445-447.

In contrast, this case presents the offensive use of the results of prior adjudication against the criminal defendant. Interestingly, aspects of both the doctrine of res judicata and collateral estoppel are presented. Obviously armed robbery is a different cause of action than felony murder. As the lead opinion aptly explores, the jury determination that the defendant is guilty of armed robbery as charged under count sixteen, even though logically equivalent to a finding of guilt on the first element of felony murder, is not the equivalent, given the capacity for inconsistency allowed to a jury in rendering its assessment of guilt. See *ante,* pp 597-600. Thus, there is no res judicata of the felony element of the felony-murder charge absent the fact that it can be inferred from the guilty verdict that the predicate felony was deemed to have been committed. What the prosecutor is arguing in his request that the jury verdict regarding count sixteen be applied as conclusive evidence of the predicate felony is a request for collateral estoppel.

The distinction between the two doctrines, as noted in the dissenting opinion, is not dispositive of this case because there is no legal basis for allowing the use of one type of preclusion and not the other. See *post,* p 622, n 1. The distinction, however, does illustrate the potential for the doctrine of res judicata to turn a retrial into a meaningless procedural exercise in which the result is all but dictated to the jury if everything properly decided by the first jury is recycled for mandatory use by the second jury. If we were to accept the prosecutor's request, res judicata, taken to its

extreme, could be invoked under these facts to transfer all elements of felony murder established by reference to the guilty verdict obtained in the first trial. Every one of the elements of felony murder that was necessarily found for the prosecution at the conclusion of the first trial would have to be accepted by the jury. Only the omitted intent determination would be left for the jury at the conclusion of the retrial.

## III

The felony-murder statute under which the defendant was committed, MCL 750.316; MSA 28.548,[5] calls for the factfinder to determine

[5] MCL 750.316; MSA 28.548 provides in pertinent part:

Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life.

CJI2d 16.4 suggests the following instruction be given to the jury where first-degree felony murder is charged:

(1) The defendant is charged with first-degree felony murder. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].

(3) Second, that the defendant had one of these three states of mind: [he/she] intended to kill, or [he/she] intended to do great bodily harm to [name deceased], or [he/she] knowingly created a very high risk of death or great bodily harm knowing that death or such harm was the likely result of [his/her] actions.

(4) Third, that when [he/she] did the act that caused the death of [name deceased], the defendant was committing [(or) attempting to commit/ (or) helping someone else commit] the crime of [state felony]. For the crime of [state felony], the prosecutor must prove each of the following elements beyond a reasonable doubt: [state elements of felony].

whether a felony was committed, not whether the defendant has been convicted. The majority today overextends the Sixth Amendment right to an impartial jury when it holds that that right encompasses the right to an independent jury determination of each essential element of the crime. *Ante,* pp 599-600.

I agree with the understanding expressed in the dissenting opinion on this issue to the extent that the Sixth Amendment right to an impartial jury functions to provide a check on the power of the government over the individual. The right insures the accused has the option of having the ultimate determination of his innocence or guilt rendered by peers rather than officials. *Duncan v Louisiana,* 391 US 145, 155; 88 S Ct 1444; 20 L Ed 2d 491 (1968).

The rights afforded by the Sixth Amendment

[(5) Fourth, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.]

[*Use (6) or (7) where factually appropriate:*]

(6) To establish an attempt the prosecutor must prove beyond a reasonable doubt that the defendant intended to commit the crime of [*state felony*] and that [he/she] took some action toward committing that crime, but failed to complete it. It is not enough to prove that the defendant made preparations for committing the crime. Things like planning the crime or arranging how it will be committed are just preparations; they do not qualify as an attempt. In order to qualify as an attempt, the action must go beyond mere preparation to the point where the crime would have been completed if it hadn't been interrupted by outside circumstances. To qualify as an attempt, the act must clearly and directly be related to the crime of [*state felony*] and not some other objective.

(7) The defendant must have been either committing or helping someone else commit the crime of [*state felony*]. To help means to perform acts or give encouragement, before or during the commission of the crime, that aids or assists in its commission. At the time of giving aid or encouragement, the defendant must have intended the commission of the [*state felony*].

also guarantee an impartial jury. Impartiality addresses the state of the jury before the trial begins. The right includes the procedures in place to call jurors and name them to a panel for a given trial. The system of selection should not allow jurors who are biased or predisposed. *Witherspoon v Illinois,* 391 US 510; 88 S Ct 1770; 20 L Ed 2d 776 (1968). The constitutional issues surrounding the requirement of an impartial jury center on insuring that the process by which the jury is drawn contemplates a fair representation of the community. *JEB v Alabama ex rel TB,* 511 US —, —, n 19; 114 S Ct 1419; 128 L Ed 2d 89, 105, n 19 (1994).

The defendant in this case was able to select a jury trial in the first prosecution and will be able to on retrial. He participated in voir dire and registered no complaint that the manner in which the jury was impaneled did not contemplate a representation of the members of the community. There were no complaints that any juror demonstrated bias or predisposition and was allowed to remain. Where a conviction has been validly obtained in a prior trial under these circumstances, its use does not render the jury impartial under the Sixth Amendment, nor does it deprive the defendant of a Sixth Amendment right to a jury decision regarding the remainder of the case. An impartial jury did determine that the defendant committed an armed robbery. Similarly, an impartial jury will determine whether or not the defendant committed felony murder regardless of whether the prosecution is granted the preclusive use of the first jury's finding with respect to the armed robbery.

As noted by the dissent, the prohibition against a directed verdict is a prohibition against the judge refusing to allow any jury to decide the elements. *Post,* p 635. Here a jury has been al-

lowed to pronounce the defendant guilty of armed robbery.[6] The prosecutor's argument is for the recognition of that finding in the retrial as distinguished from a governmental agent's intervention in the fact finding.

IV

Having concluded that the defendant is not deprived of his Sixth Amendment right to an impartial jury by the application of res judicata or collateral estoppel, I now turn to discuss the inherent prejudice to the defendant's right to a fair trial that is unavoidable in the use of these doctrines against a criminal defendant in a situation in which more than one charge of criminal activity arises from the same nucleus of facts.

While framed in a right to jury analysis, the New Jersey Supreme Court found the preclusive use of a prior conviction to establish an element of a crime in a subsequent prosecution under facts similar to those presently considered to induce the jury "to think in terms of guilt, instead of presumed innocence, before its deliberations have begun." *State v Ingenito*, 87 NJ 204, 216; 432 A2d 912 (1981).

"[T]he presumption of innocence . . . is . . . the most universal and strongest presumption known to law . . . ." *People v Licavoli*, 264 Mich 643, 655; 250 NW 520 (1933). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under

---

[6] In responding to the view that collateral estoppel applied against a criminal defendant constitutes a violation of the Sixth Amendment right to a jury, and the analogy to the prohibition against granting a directed verdict to the prosecution, it has been observed that "[a] critical [distinction] . . . is that, when collateral estoppel is applied, the defendant has already had a jury hear, examine and sift the testimony of the witnesses during the prior trial. The truth of a particular fact has been established." *State v Ingenito*, 87 NJ 204, 226; 432 A2d 912 (1981) (Schreiber, J., concurring).

our system of criminal justice." *Estelle v Williams,*
425 US 501, 503; 96 S Ct 1691; 48 L Ed 2d 126
(1976). It is axiomatic that in any criminal case a
defendant is presumed innocent until proven
guilty. *People v Kayne,* 286 Mich 571, 576; 282
NW 248 (1938). The importance of the presump-
tion of innocence has been characterized as "that
bedrock 'axiomatic and elementary' principle
whose 'enforcement lies at the foundation of the
administration of our criminal law.'" *In re Win-
ship,* 397 US 358, 363; 90 S Ct 1068; 25 L Ed 2d
368 (1970) (quoting *Coffin v United States,* 156 US
432, 453; 15 S Ct 394; 39 L Ed 481 [1895]).

An error that infringes upon the presumption of
innocence deprives the criminal defendant of a fair
trial and is therefore a due process violation.
*Taylor v Kentucky,* 436 US 478, 479; 98 S Ct 1930;
56 L Ed 2d 468 (1978).

While the presumption of innocence regarding
the crime of armed robbery no longer exists after
a valid conviction has been obtained, see *People v
Rowell,* 14 Mich App 190, 196; 165 NW2d 423
(1968), the presumption continues to exist regard-
ing the reversed felony-murder charge because it
was not validly obtained. Allowing knowledge of
the fact of the first jury's finding of guilt with
regard to armed robbery would unfairly prejudice
the second jury's ability to presume the defendant
innocent of felony murder. It is not reasonable to
expect a jury to presume innocence with respect to
the remaining elements, despite cautionary in-
structions, in the face of being told another jury
determined the defendant had in fact committed
the armed robbery.

In *Sandstrom v Montana,* 442 US 510; 99 S Ct
2450; 61 L Ed 2d 39 (1979), the Supreme Court
ruled that a jury instruction interfered with the
presumption of innocence because it could have

been interpreted to conclusively establish an essential element and was therefore a violation of the criminal defendant's due process rights.[7]

In *State v Johnson*, 134 NH 498; 594 A2d 1288 (1991), the defendant was charged in a first trial with the unlawful operation of a motor vehicle after his license had been revoked. The defendant testified that he let a friend use his car on the day in question. A police officer testified that he knew the defendant and recognized him. The car was abandoned after a chase and the driver had fled. The jury found the defendant guilty, and the defendant was subsequently charged with perjury on the basis of his testimony at trial.

Similar to the case presently before this Court, the prosecutor in *Johnson* moved that the doctrine of collateral estoppel be applied to the effect that the jury would be instructed that the conviction of operating the motor vehicle was conclusive proof of the truth element of the perjury crime—that the defendant, and not a friend, was operating the vehicle.

As is the case under Michigan law, the New Hampshire Supreme Court observed that it has never allowed the application of collateral estoppel to affirmatively establish an essential fact against a defendant in a criminal prosecution. *Id.,* p 501.[8]

---

[7] This Court adopted *Sandstrom's* due process analysis in reference to our state constitution equivalent to the federal Due Process Clause, Const 1963, art 1, § 17. *People v Wright,* 408 Mich 1, 22; 289 NW2d 1 (1980).

[8] Much of the foreign authority relied on by the prosecutor and the dissent in the case presently before this Court is distinguishable in that it addresses situations in which the issue precluded is a determination of the "status" of the defendant, such as alien citizenship or paternity. See *United States v Bejar-Matrecios,* 618 F2d 81 (CA 9, 1980); *Hernandez-Uribe v United States,* 515 F2d 20 (CA 8, 1975); *Pena-Cabanillas v United States,* 394 F2d 785 (CA 9, 1968); *United States v Rangel-Perez,* 179 F Supp 619 (SD Cal, 1959); *People v Mojado,* 22 Cal App 2d 323; 70 P2d 1015 (1937); *Commonwealth v Ellis,* 160 Mass 165; 35 NE 773 (1893); *State v Braskett,* 10 Ohio Op 2d 497, 499; 162 NE2d 922 (1959).

In *Carmody v Seventh Judicial Dist Court,* 81 Nev 83; 398 P2d 706 (1965), the defendant brought a res judicata or double jeopardy claim, arguing that in entering a guilty plea for assault, the subsequent prosecution for murder after the victim died was barred. Any statements contained in that opinion about the use of the plea as res judicata against the defendant was dicta, as is the case in *United States v Colacurcio,* 514 F2d 1, 6 (CA 9, 1975) (see dissenting opinion, p 7, n 13). *State v Sargood,* 80 Vt 412; 68 A 51 (1907), involved an evidentiary ruling regarding the admissibility of a prior criminal conviction for poisoning animals in order to show motive and purpose in a subsequent prosecution for attempting to poison two people. *Id.* This case is also distinguishable in that the conclusive use of the prior conviction to prove the defendant did poison animals at one time as *evidence of* motive and purpose was not used to conclusively establish any essential element of the prosecution for attempting to poison people.

The early Massachusetts case of *Commonwealth v Evans,* 101 Mass 25 (1869), closely parallels the prosecutor's request considered by this Court today. In *Evans,* the defendant was tried and convicted of assault. When the victim died, charges of manslaughter were brought. In the second trial, the judge instructed the jury that the prior assault conviction was conclusive evidence that the defendant's use of the knife was unjustifiable. While collateral estoppel was not applied to establish any essential elements of the charge, it was applied to bar relitigation of the self-defense theory argued by the defendant in the first trial. The broadly sweeping language used by the court is devoid of constitutional analysis, but suggests it would have upheld the prosecutor's request in this case:

> Upon general principles, the parties being the same, the former judgment must be held to have established all facts which were involved in the issue then tried, and essential to the judgment rendered upon it. [*Id.,* p 27.]

My research of contemporary Massachusetts law did not uncover any criminal cases with similar facts in which the doctrine of collateral estoppel was invoked to bar relitigation of essential elements by a defendant. It is clear that a party to a civil action may invoke collateral estoppel to preclude further litigation regarding issues decided by a criminal conviction. *Aetna Casualty & Surety Co v Niziolek,* 395 Mass 737; 481 NE2d 1356 (1985). It has also been held in *Commonwealth v 707 Main Corp,* 371 Mass 374; 357 NE2d 753 (1976), that a determination in a civil lawsuit that a film was not obscene did not bar the relitigation of whether the film was obscene in the criminal prosecution for dissemination of obscene matter.

*People v Ford,* 65 Cal 2d 41; 52 Cal Rptr 228; 416 P2d 132 (1966), is the only recent authority on point that has allowed collateral estoppel in a subsequent prosecution arising out of the same transaction. Given its subsequent history, addressed by the lead opinion, *ante,* pp 608-609, it is of questionable viability. Like *Evans, supra, Ford* was decided before *Ashe v Swenson, supra,* and *Simpson v Florida,* 403 US 384; 91 S Ct 1801; 29 L Ed 2d 549 (1971) (because mutuality is not

The court concluded that the defendant's due process right to have a jury determine every element of the crime charged outweighed the state's argument for judicial economy. *Id.*, p 504.

Similarly, the prosecution in this case asserts vague arguments for judicial economy and efficiency that do not outweigh the potential for eroding the presumption of innocence on the remaining elements inherent in establishing one element of a crime where both the prior conviction and the subsequent prosecution arise from the same nucleus of facts.[9]

Knowledge of a prior conviction of the underlying felony, coupled with an instruction that the conviction conclusively establishes that the defendant committed that act, will almost inevitably taint the jury's view of whether the defendant committed the remaining acts necessary for conviction of felony murder. The jury determination

present in the collateral estoppel provided for by the Fifth and Fourteenth Amendments, the prosecution cannot rely on a reversed conviction as a basis for collateral estoppel to counter the defendant's assertion that the government may not bring a third charge after the first conviction was reversed and an acquittal was obtained in the second trial). Neither *Ford* nor *Evans* addresses the constitutional issues raised today.

Similarly, the early English cases cited by the dissent, *King v Matthews,* 5 Price 202 (1797), and *Attorney General v Wakefield,* 5 Price 202, 203 (1797), were not followed by the English court in *Attorney General v King,* 5 Price 195, 202, n *; 146 Eng Rep 579, 582, n 2 (Ex Div, 1817). "Neither *Matthews* nor *Wakefield* appears to have been noticed by any other English court. It is commonly recognized that until 1974, there was still no direct English authority regarding the question whether issue estoppel applies in criminal proceedings." *United States v Pelullo,* 14 F3d 881, 894, n 6 (CA 3, 1994). The 1974 case allowing collateral estoppel to be applied against a criminal defendant, *R v Hogan,* 59 Crim App 174, 183 (1973), was overruled by the House of Lords. *Director of Public Prosecutions v Humphrys,* 62 Crim App 1 (1975).

[9] The dissenting opinion maintains that because the prosecution must prove malice upon retrial (the instruction the first jury did not receive), the jury would not be precluded from hearing evidence of the underlying facts of the felony. *Post,* p 637. If, as I suspect, the underlying facts of the felony must be explored to establish the necessary malice, where is the judicial economy?

of guilt on all elements of a crime cannot be seen as a mechanistic, formulaic calculation. Each element is not determined independent of the other necessary factual determinations, nor should it be. The whole may not equal the sum of the parts. The collective, deliberative determination of one fact likely influences the consideration and resolution of others. The presence or absence of one element of a crime may change the way a jury approaches a case. The risk is simply too high that the jury will not presume innocence once it is informed of the determination of guilt of the armed robbery.

Mallett, J., concurred with Brickley, J.

Riley, J. (*dissenting*). In this case, we must decide whether the doctrine of res judicata or collateral estoppel (preclusion)[1] bars defendant from relitigating, and relieves the prosecution from reproving, the felony of armed robbery at his retrial for first-degree felony murder where defendant's conviction for armed robbery was affirmed on appeal. Because I believe res judicata or collateral estoppel bars relitigation of the armed-robbery conviction, I dissent from the lead and concurring opinions. Moreover, I am persuaded that defendant was afforded his constitutional rights during his armed-robbery trial and, despite the use of this conviction on retrial, will again be afforded all his constitutional rights.

I

Before reaching the merits of this question, it is

---

[1] Whether the instant case properly implicates the doctrine of res judicata or collateral estoppel is not dispositive in this case. Indeed, there is no question that the elements of either would be satisfied on the instant facts.

necessary to distinguish between merely using a prior conviction as evidence to prove an element of a crime and using a conviction as conclusive proof of one element of a crime as presented in this case. In the former, the Michigan Rules of Evidence[2] would raise the initial barrier to entry, with possible constitutional infringements raising secondary concerns. On the other hand, the latter requires an analysis of whether collateral estoppel or res judicata is appropriate in a criminal case, as well as whether applying it against a defendant is constitutionally permissible. In this case, we are only presented with the latter, and, accordingly, I limit my discussion to these questions.

II

A. RES JUDICATA/COLLATERAL ESTOPPEL
IN CRIMINAL CASES

The application of res judicata and collateral estoppel principles in criminal law is well estab-

[2] MRE 803(22) provides:

Evidence of a final judgment, entered after a trial or upon a plea of guilty (or upon a plea of nolo contendere if evidence of the plea is not excluded by MRE 410), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the state in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

Further, assuming these requirements are met, a court then would likely consider MRE 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, these questions are not before this Court, and, accordingly, I do not address them. See also Vestal, *Issue preclusion and criminal prosecutions,* 65 Iowa L R 281, n 1 (1980).

lished in the United States and has been applied both to the benefit of the defendant and the prosecution. When applied to the benefit of a defendant, it is primarily used to protect a defendant's double jeopardy right against further prosecution[3] or to estop the relitigation of various motions decided in the defendant's favor.[4] Similarly, when used by the prosecution against a defendant, courts have used it to preclude relitigation of pretrial evidentiary/suppression motions[5] or similar factual issues at trial,[6] as well as to preclude the relitigation of certain facts previously adjudicated that are later essential elements in a criminal prosecution.[7]

[3] See *Ashe v Swenson*, 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970).

[4] See, e.g., *People, v Gray*, 393 Mich 1, 4; 222 NW2d 515 (1974) (a prior determination of the issue of voluntariness of a confession is "binding on the people for all purposes under the doctrine of collateral estoppel"); *United States ex. rel DiGiangiemo v Regan*, 528 F2d 1262, 1265-1266 (CA 2, 1975) (due process requires application of collateral estoppel where the evidence was previously suppressed in a prior prosecution).

[5] See, e.g., *People v Mann*, 89 Mich App 511, 513-514; 280 NW2d 577 (1979); *People v Scott*, 93 Misc 2d 1074; 405 NYS2d 169 (1978); *United States v Malizia*, 429 F Supp 492, 495 (SD NY, 1977). Cf. *People v Gray*, n 4 *supra*. See also *Steele v United States*, 267 US 505, 507; 45 S Ct 417; 69 L Ed 761 (1925).

[6] See *State v Brown*, 201 SC 417, 423; 23 SE2d 381 (1942) (the value of property determined in a prior proceeding was binding on the defendant in a subsequent trial); *State v Sargood*, 80 Vt 412, 413-414; 68 A 51 (1907) (a conviction for poisoning colts in a prior prosecution operates as conclusive proof of the act of poisoning in a subsequent prosecution).

[7] See, e.g., *People v Ford*, 65 Cal 2d 41, 50-51; 52 Cal Rptr 228; 416 P2d 132 (1966) (a prior conviction for numerous felonies is res judicata and conclusive proof of the predicate felony for felony murder); *Commonwealth v Evans*, 101 Mass 25, 27 (1869) (a conviction for assault before the death of the victim precludes relitigation of any justification for the crime, i.e., self-defense, in a subsequent prosecution for manslaughter of the same victim); *Commonwealth v Ellis*, 160 Mass 165; 35 NE 773 (1893) (a prior criminal adjudication of the issue of paternity precludes relitigation of the issue in a subsequent prosecution under the same statute for a later offense); *United States v Colacurcio*, 514 F2d 1, 6 (CA 9, 1975) (see n 13 for a parenthetical example); *Carmody v Seventh Judicial Dist Court*, 81 Nev 83, 85-86;

Indeed, Professor Allan D. Vestal, the leading scholar with respect to res judicata and collateral estoppel,[8] espouses its application both against the prosecution and the defendant. See Vestal, *Issue preclusion and criminal prosecutions,* 65 Iowa L R 281, 312, 319-321 (1980). While conceding that use of these doctrines against a defendant does not often arise,[9] Professor Vestal contends that it is appropriately within the power of the courts[10] to apply it against a defendant, especially when the "defendant was afforded the opportunity to exercise constitutional rights at the first trial"—"the

398 P2d 706 (1965) (see n 13 for a parenthetical example); *State v Braskett,* 10 Ohio Op 2d 497, 499; 162 NE2d 922 (1959) (a determination of the element of paternity decided in a prior prosecution is binding on the defendant in a subsequent prosecution). See also n 13.

[8] Professor Vestal is widely cited by courts, including the United States Supreme Court, restatements, and other scholarly articles. In a tribute to Professor Vestal, Justice Ruth Bader Ginsburg pronounced him "the giant in the field" of the prior adjudication doctrine. Ginsburg, *The work of Professor Allan Delker Vestal,* 70 Iowa L R 13, 14 (1984).

[9] Vestal, *supra* at 314, 319-320.

[10] When the state asserts issue preclusion *against* a criminal defendant, a discussion of double jeopardy or due process is inappropriate. Rather, the source of the state's claim of issue preclusion must be the power of the courts to control judicial administration—that is, the courts' power to administer justice. Admittedly, this has always been the ground for res judicata/preclusion in civil cases; courts are now beginning to recognize the logic of its application in criminal cases as well. [*Id.* at 284.]

For example,

> an individual might be charged with the distribution of pornographic materials on several different days with the distribution on each day being a separate offense. Assuming that the defendant can be tried on the various separate offenses in separate trials, if there is a conviction on the first charge—assuming the incentive to litigate the matter fully—a finding that the materials were pornographic should be binding in the subsequent prosecutions if identical materials are at issue. Logic and wise use of the time of the courts, attorneys, and litigants would indicate that relitigation of the question of the nature of the material should not be allowed. [*Id.* at 297.]

defendant has had a day in court and the fact has been adjudicated against him."[11] *Id.* at 314, 312.

Moreover, Professor Vestal is not alone in his interpretation.[12] Indeed, before the United States Constitution was ratified, English courts contemplated its use both for and against the defendant in a criminal trial. See comments, *The use of collateral estoppel against the accused,* 69 Colum L R 515, 523 (1969). In *Rex v Duchess of Kingston,* 20 Howell St Tr 355, 542 (1776), the court declared:

> [I]f the rule of evidence must be, as it is often declared to be, reciprocal; and that in all cases, in which sentences favourable to the prisoner, are to be admitted as conclusive evidence for him; the sentences, if unfavourable to the prisoner, are in like manner conclusive evidence against him . . . .

However, unlike the instant case in which the prior proceeding was tried by a jury, the court questioned its application if the prior proceeding was tried by a judge and not a jury. *Id.* See also comments, *supra* at 523, n 63.

Subsequently, and shortly after ratification of the United States Constitution, two other English courts adhered to this view, holding that a prior decision in a condemnation proceeding was conclu-

---

[11] See also Vestal & Coughenour, *Preclusion/res judicata variables: Criminal prosecutions,* 19 Vand L R 683, 698-699 (1966):

> [Claim preclusion against a criminal defendant is usually appropriate because] the defendant has had his day in court on the matter; he has had the incentive to litigate, and the issue has been determined against him. This does not deprive the defendant of anything, for preclusive effect can be given a judgment only after the court has made a final determination in the matter. [*Id.* at 699.]

[12] See also comments, *The use of collateral estoppel against the accused,* 69 Colum L R 515, 523-524 (1969).

sive evidence against the defendant in a later criminal proceeding. *King v Matthews,* 5 Price 202 (1797) (condemnation of a boat as found in a prior condemnation proceeding is "conclusive evidence of the defendant's having broken the condition of his bond"); *Attorney General v Wakefield,* 5 Price 202, 203 (1797) ("the record of condemnation was conclusive evidence of the seized paper being liable to duty, and that it had been sent out from the defendant's mill before the officer had taken an account of it, as was stated in the record of condemnation").

Following the lead of the English common law, the early American courts likewise applied the doctrines of collateral estoppel and res judicata against criminal defendants, even when its use precluded the relitigation of essential elements of a crime. See, e.g., *Commonwealth v Evans,* 101 Mass 25, 27 (1869); *Commonwealth v Ellis,* 160 Mass 165; 35 NE 773 (1893).[13]

---

[13] Indeed, courts have applied these doctrines of preclusion in many different factual settings, including in alienage cases, see *United States v Rangel-Perez,* 179 F Supp 619 (SD Cal, 1959); *Pena-Cabanillas v United States,* 394 F2d 785 (CA 9, 1968); *United States v Bejar-Matrecios,* 618 F2d 81 (CA 9, 1980); *Hernandez-Uribe v United States,* 515 F2d 20 (CA 8, 1975), murder trials, *Carmody,* n 7 *supra* at 85-86 ("Because of their conviction of robbery by reason of their pleas of guilty, under the doctrine of res judicata they may be precluded in the trial for murder from contending that they did not commit the robbery. Even so, no fundamental unfairness would result to petitioners in their trial for murder"), criminal tax cases, *Colacurcio,* n 7 *supra* at 6 (collateral estoppel is not just limited to status cases, i.e., whether a defendant is an alien, but applicable to a criminal tax case; the court, however, held that all the requirements for collateral estoppel were not met because the issue "was not a necessary element of the conviction in the prior case and was not 'distinctly put in issue and directly determined'"), criminal poisoning, *Sargood, supra* at 413-414 (see n 6 for a parenthetical example), and criminal child neglect cases, see *Braskett,* n 7 *supra; People v Mojado,* 22 Cal App 2d 323; 70 P2d 1015 (1937) (a former conviction for not supporting a minor child bars relitigation of paternity in a later prosecution); *Ellis,* n 7 *supra.*

The concurring opinion attempts to distinguish much of this precedent by noting that it only forecloses the relitigation of a defendant's status. This is a distinction without a difference. The fact remains

Indeed, more recently, in a case addressing the exact issue as in the case at bar, the California Supreme Court held that in a retrial for felony murder, the prosecution could gain the benefit of prior convictions for various felonies affirmed on appeal and could use them to satisfy the predicate felony element of felony murder:

> It is obvious that the felony convictions obtained at the first trial substantially affected the prosecution and defense upon retrial of the murder charge. The burden upon the prosecution was lessened to the extent that it was permitted the benefit of the felony-murder rule without the necessity of having to prove the elements of the respective felonies. Nor was the defense permitted to dispute the fact that the necessary elements of the felonies had been conclusively found. These facts do not, however, compel the conclusion urged upon us by defendant.
>
> The doctrine of res judicata applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined though the offenses be different. Thus where a defendant is tried on multiple counts of a single information, each count being considered as a separate and distinct offense, the doctrine of res judicata operates to preclude the relitigation of issues finally determined upon retrial of only one count. It follows that the doctrine of res judicata justifies instructions, where relevant, that a defendant has been found guilty of crimes finally adjudicated which are charged as elements in another charge or charges then in the process of being retried. Accordingly, it was not error for the trial court to give appropriate instructions that defen-

that preclusion is being applied against a criminal defendant with respect to an essential element of a crime. While this case would inform the jury of a prior conviction rather than just a defendant's status, any fears that this would sway the jury toward a guilty verdict are allayed by a necessary limiting instruction and the unique stricture of felony murder in Michigan. See part II(B)(2).

dant had been convicted of the various felonies, and that if they found that defendant's commission of such felonies was conjoined with his commission of the homicide, they might predicate their verdict on the felony-murder rule articulated in Penal Code, section 189. [*People v Ford,* 65 Cal 2d 41, 50-51; 52 Cal Rptr 228; 416 P2d 132 (1966). Citations omitted.]

Accordingly, from a review of the case law, it is clear that a significant number of courts and commentators have found the doctrines sound and applicable against a criminal defendant.

### B. CONSTITUTIONAL IMPLICATIONS

Despite this well-established precedent applicable to criminal cases, the lead opinion contends that these decisions fail to fully afford a defendant his constitutional rights. While admitting that defendant was given his day in court for the armed robbery, the lead opinion maintains that his retrial for felony murder is a separate and distinct crime thereby making his conviction for armed robbery inapplicable as conclusive proof of the predicate felony for felony murder. In essence, the lead opinion argues that this violates a defendant's right to trial by jury, as well as infringing on his due process rights to a presumption of innocence and proof beyond a reasonable doubt. I disagree.

### 1. JURY TRIAL

The Sixth Amendment of the United States Constitution provides in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an*

*impartial jury of the State and district wherein
the crime shall have been committed, which dis-
trict shall have been previously ascertained by
law* . . . . [Emphasis added.]

As explained on many occasions by the United
States Supreme Court, its primary purpose was to
"prevent oppression by the Government." *Duncan
v Louisiana,* 391 US 145, 155; 88 S Ct 1444; 20 L
Ed 2d 491 (1968):

> Providing an accused with the right to be tried
> by a jury of his peers gave him an inestimable
> safeguard against the corrupt or overzealous pros-
> ecutor and against the compliant, biased, or eccen-
> tric judge. If the defendant preferred the common-
> sense judgment of a jury to the more tutored but
> perhaps less sympathetic reaction of the single
> judge, he was to have it. Beyond this, the jury trial
> provisions in the Federal and State Constitutions
> reflect a fundamental decision about the exercise
> of official power—a reluctance to entrust plenary
> powers over the life and liberty of the citizen to
> one judge or to a group of judges. Fear of un-
> checked power, so typical of our State and Federal
> Governments in other respects, found expression
> in the criminal law in this insistence upon commu-
> nity participation in the determination of guilt or
> innocence. [*Id.* at 156.][14]

Hence, to fulfil this purpose, the right to a jury

[14] The instant case does not question whether the jury can be
impartial. If it did, a different inquiry would be required:

"Impartiality is not a technical conception. It is a state of
mind. For the ascertainment of this mental attitude of appro-
priate indifference, the Constitution lays down no particular
tests and procedure is not chained to any ancient and artificial
formula." [*Frazier v United States,* 335 US 497, 511; 69 S Ct
201; 93 L Ed 187 (1948), quoting *United States v Wood,* 299 US
123, 145-146; 57 S Ct 177; 81 L Ed 78 (1936).]

trial is applicable in all cases "triable by jury at the common law, and with all the common-law incidents to a jury trial, so far, at least, as they can be regarded as tending to the protection of the accused." 1 Cooley, Constitutional Limitations (8th ed), pp 668-673. Against this backdrop, I review first whether the common law permitted the use of preclusion against a criminal defendant at the time the right to a jury trial was ratified.

A review of the English common law at the time of ratification indicates that at least one court contemplated the use of estoppel principles against a defendant as long as he had a jury trial in the former prosecution. See *Duchess of Kingston,* and comments, *supra.* Moreover, shortly after ratification, two more English courts applied the doctrines of preclusion against a criminal defendant. See *Matthews* and *Wakefield, supra.* Accordingly, contrary to the lead opinion's contention, it cannot be said that use of preclusion against a criminal defendant is void in constitutional history. Instead, what can be gleaned from the history of the common law is a recognition of the existence of this procedure at the time of ratification. Indeed, the lack of numerous cases on this subject is not surprising in light of the unique factual setting required for its use, e.g., retrial of one count in a multiple-count information.

Nonetheless, while use of preclusion against a defendant at common law may not be dispositive evidence that it does not violate the right to a jury trial, it is helpful in understanding the right. Indeed, when considering its use at common law in light of the general purpose behind the Sixth Amendment's right to a jury trial, it is evident that its application against a criminal defendant is generally valid and constitutionally permissible.

As applied to the instant case, I find it both

realistic and rational[15] to preclude defendant from relitigating his armed-robbery conviction at his retrial for felony murder. Defendant unquestionably had a constitutionally valid jury trial with respect to. the armed-robbery conviction and, on retrial for felony murder, will have a constitutionally valid jury trial. Moreover, defendant's conviction for armed robbery cannot be said to be the result of government oppression by either the judge or the prosecutor—a jury, as opposed to a judge or an overzealous prosecutor, found him guilty beyond a reasonable doubt of armed robbery.

Furthermore, while armed robbery and felony murder are separate and distinct crimes, the predicate felony used to justify a charge of felony murder in this case, i.e., armed robbery, is not separate and distinct from the felony of armed robbery, of which defendant stands convicted. Indeed, the elements were the same in defendant's first trial and will be the same on retrial. Hence, after having this issue conclusively determined by a jury, it cannot be relitigated at defendant's felony-murder trial.

Nevertheless, by relying on case law addressing inconsistent verdicts, the lead opinion attempts to illustrate that the separateness of the crimes somehow permits the jury to consider the armed-robbery conviction anew in this retrial for felony murder. *People v Lewis,* 415 Mich 443; 330 NW2d 16 (1982); *United States v Powell,* 469 US 57; 105 S Ct 471; 83 L Ed 2d 461 (1984). However, a close review of the case law cited by the lead opinion

[15] [C]ollateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. [*Ashe,* n 3 *supra* at 444.]

clearly indicates that this analogy is inapposite. Neither *Lewis* nor *Powell* stands for the proposition that a felony, i.e., armed robbery, must be considered anew every time it is combined in a compound offense such as felony murder. Instead, *Lewis* simply held that this Court would not review inconsistent verdicts, primarily because of possible jury lenity. *Id.* at 450-453. Similarly, the United States Supreme Court, under its supervisory powers over the federal courts, held:

> Given . . . the Government's inability to invoke review [i.e., after an acquittal, double jeopardy protections prevent the government from seeking review or a new trial], the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity, . . . the best course to take is simply to insulate jury verdicts from review on this ground. [*Powell, supra* at 68-69.]

Therefore, the lead opinion's analogy is clearly not appropriate and does not support the reconsideration of the armed-robbery conviction in this case.

Indeed, when following the lead opinion's analogy to its necessary conclusion, it becomes clear that its attempted application to this case would manipulate these precedents from simply a power of jury nullification to a *right* to render inconsistent verdicts. However, as Judge Friendly so clearly stated in *United States v Kerley,* 838 F2d 932, 938 (CA 7, 1988), courts have consistently held that the jury merely

> has the *power* to acquit on bad grounds, because the government is not allowed to appeal from an acquittal by a jury. But jury nullification is just a power, not also a right, *United States v Anderson,* 716 F2d 446, 449-450 (CA 7, 1983); *United States v Dougherty* [154 US App DC 76, 100] 473 F2d 1113, 1137 (1972); Devlin, The Judge, 117-148

(1979) . . . . [See *Lewis, supra* at 449; *Powell,
supra* at 66.]

In essence, the lead opinion fails to recognize that
we simply do not have an inconsistent verdict
problem in this case and accordingly do not have
the problem of trying to explain the verdict. In-
stead, we have a clear and affirmative message
from the jury, *guilty of armed robbery.* It is the
use of this message that I would give conclusive
effect to in defendant's retrial for felony murder.[16]

Moreover, I disagree that foreclosing the reliti-
gation of the armed-robbery conviction in defen-
dant's retrial for felony murder would be the
equivalent of directing a verdict of guilty against
defendant, thereby interfering with the role of the
jury and violating *Sullivan v Louisiana,* 508 US —;
113 S Ct 2078, 2080; 124 L Ed 2d 182 (1993).
Instead, I believe that the lead opinion miscon-
strues the clear distinction between the doctrines
of preclusion and a directed verdict.

When preclusion is invoked, a court is respect-
ing the previous jury decision and foreclosing
repetitive and unnecessary litigation on the issue,
i.e., once a party "has had a day in court and the

[16] Moreover, precluding the defendant from relitigating his armed-
robbery conviction would not preclude the jury from rendering incon-
sistent verdicts in this case, or, more appropriately stated and consis-
tent with the case law, would not make the possible existence of
inconsistent verdicts in this case reviewable by this Court. The crime
of felony murder is not complete until the jury finds that the murder
occurred during the commission of the armed robbery, of which
defendant already stands convicted. Indeed, because of this temporal
element, it still would be appropriate to follow existing precedent and
instruct the jury regarding second-degree murder as a lesser included
offense of first-degree murder. See *People v Aaron,* 409 Mich 672, 725;
299 NW2d 304 (1980). In practice, this already occurs because the jury
must first find second-degree murder and the malice attributable to
the murder before deciding whether to enhance the crime to first-
degree murder. *Id.* at 721. Moreover, while not binding on this Court,
the Michigan Criminal Jury Instructions already structure the in-
structions in such a manner as to provide the jury with this possibil-
ity.

fact has been adjudicated against him," the issue is foreclosed. Vestal, *supra* at 312.

On the other hand, when directing a verdict, a trial judge is refusing to let *any* jury decide the issue, not because a previous jury has already decided the issue, but because as a matter of law no reasonable minds could disagree about the issue. In other words, a judge will grant a directed verdict when, on the evidence presented, no judgment could reasonably be rendered in favor of the nonmoving party. See Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), Rule 2.515, pp 228-229.

In the instant case, we are unquestionably addressing the doctrines of preclusion, not a directed verdict. Nonetheless, even if one disagreed with this distinction, use of preclusion in this case would still be consistent with the reasoning in *Sullivan:*

> The right [to trial by jury] includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty." . . . Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. [113 S Ct 2080.]

In this case, a jury and not a judge has "reach[ed] the requisite finding of 'guilty'" on the armed-robbery charge. Therefore, the judge would not be directing a verdict for the prosecution in violation of *Sullivan.* Instead, the judge would be applying the doctrines of preclusion—a distinct concept from a directed verdict—on the basis of a previous jury decision on the merits, i.e., a conviction of armed robbery.

Further, contrary to the lead opinion's concern,

precluding defendant from relitigating the elements of armed robbery will not remove significant facts from the jury's deliberative process or create a strong tendency toward a guilty verdict in violation of his right to a jury trial. Indeed, the application of statutory felony murder in Michigan refutes these concerns.

In *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), this Court distinguished between felony murder as it existed at common law and Michigan's statutory felony-murder offense. There, we determined that "Michigan has no statutory felony-murder rule which allows the mental element of murder to be satisfied by proof of the intention to commit the underlying felony."[17] *Id.* at 733.

The Court reasoned that the statutory crime of felony murder[18] "is merely a degree-raising device" with the commission of the underlying felony during the course of the murder raising the punishment to first-degree murder. See *Aaron, supra* at 719. Thus, in order to convict a defendant of felony murder, the jury must first find that he committed the murder, or in this case, aided and abetted the

---

[17] Although the circumstances surrounding the commission of the felony may evidence a greater intent beyond the intent to commit the felony, or a wanton and willful act in disregard of the possible consequence of death or serious injury, the intent to commit the felony, of itself, does not connote a "man-endangering-state-of-mind." Hence, we do not believe that it constitutes a sufficient *mens rea* to establish the crime of murder. [*Id.* at 728.]

[18] Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life. [MCL 750.316; MSA 28.548.]

murder, "before the statute is applied to elevate the degree." *Id.* at 721. Moreover, because defendant is charged with aiding and abetting a felony murder, the jury must begin by finding that defendant had the same intent as the principal[19] by either harboring an "intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard[20] of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm . . . ." *Id.* at 728-729.

With these requirements in mind, use of preclusion in this case will not remove significant facts from the jury's deliberative process so as to interfere with the rule of the jury because

> whenever a killing occurs in the perpetration or attempted perpetration of an inherently dangerous felony, . . . in order to establish malice the jury may consider the "nature of the underlying felony and the circumstances surrounding its commission," *People v Fountain,* 71 Mich App 491, 506; 248 NW2d 589 (1976). If the jury concludes that malice existed, they can find murder and, if they determine that the murder occurred in the perpetration or attempted perpetration of one of the enumerated felonies, by statute the murder will become first-degree murder. [*Aaron, supra* at 729-730.]

As applied in this case, the jury would not be relieved of finding malice and accordingly would not be precluded from hearing evidence of the underlying facts of the felony. Instead, the jury simply would be relieved from finding that all the elements of armed robbery are satisfied. Indeed,

---

[19] *People v Kelly,* 423 Mich 261, 278-279; 378 NW2d 365 (1985).

[20] This element is satisfied "if the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm . . . ." *Kelly, supra* at 278.

when reviewing both the felony-murder statute[21] and *Aaron,* it is clear that before finding the crime complete, a jury must make a temporal connection between the murder and the felony by finding that the murder occurred in the course of the felony.[22] Because the jury must make a separate and distinct finding of malice, as well as finding this temporal connection between the felony and the murder, the jury would not be deprived of the crucial underlying facts of the armed robbery.[23]

Moreover, because *Aaron* requires that the jury first find that a murder occurred before considering the existence of the underlying felony and because the malice required for murder is a separate mens rea from the intent attributable to the armed robbery, there would not be a tendency toward a guilty verdict in violation of the right to trial by jury. Certainly, if there was any sense of this tendency toward a guilty verdict, a proper limiting instruction reaffirming the jury's role, the presumption of innocence, and the use of preclusion would cure any potential problem.

Accordingly, precluding defendant from relitigating his armed-robbery conviction during his retrial for felony murder would not infringe on his

[21] See n 18.

[22] The Michigan Criminal Jury Instructions confirm this temporal element. See CJI 16:2:02.

[23] Accordingly, the instant case is substantially different from *Gutierrez v Superior Court,* 24 Cal App 4th 153, 170; 29 Cal Rptr 2d 376 (1994), relied on by the lead opinion. There, the court expressed concern

> whether, as a practical matter, the murder trial can be limited to the issue of causation and the jury instructed in the manner requested by the prosecution without causing prejudice to petitioner as to the issue actually to be decided by the jury in such a limited trial.

In the instant case, the stricture of felony murder in Michigan does not create such a limited trial and therefore does not deprive defendant of his constitutional rights.

right to trial by jury. He had his day in court with
respect to the armed-robbery conviction and had
his right to a jury trial and will once again have
his right to a jury trial with respect to felony
murder.

## 2. DUE PROCESS

Aside from the claim of constitutional infringe-
ment of the right to a jury trial, both the lead and
concurring opinions maintain that use of preclu-
sion against defendant in this case would violate
his due process rights to be presumed innocent
and to have every element of a crime found be-
yond a reasonable doubt. Again, I disagree.

In *Estelle v Williams,* 425 US 501, 503; 96 S Ct
1691; 48 L Ed 2d 126 (1976), the Court explained:

> The presumption of innocence, although not
> articulated in the Constitution, is a basic compo-
> nent of a fair trial under our system of criminal
> justice. Long ago this Court stated:
> "The principle that there is a presumption of
> innocence in favor of the accused is the undoubted
> law, axiomatic and elementary, and its enforce-
> ment lies at the foundation of the administration
> of our criminal law." *Coffin v United States,* 156
> US 432, 453 [15 S Ct 394; 39 L Ed 481] (1895).
>
> To implement the presumption, courts must be
> alert to factors that may undermine the fairness of
> the fact-finding process. In the administration of
> criminal justice, courts must carefully guard
> against dilution of the principle that guilt is to be
> established by probative evidence and beyond a
> reasonable doubt. *In re Winship,* 397 US 358, 364
> [90 S Ct 1068; 25 L Ed 2d 368] (1970).

Subsequently, in *Taylor v Kentucky,* 436 US
478, 483; 98 S Ct 1930; 56 L Ed 2d 468 (1978), the
Supreme Court clarified the presumption of inno-

cence and proof beyond a reasonable doubt by recognizing that they are interrelated concepts. In doing so, the Court explained that the general protection afforded by these concepts is the "right of the accused to 'remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion . . . .' " *Id.* at 484, n 12 (quoting 9 Wigmore, Evidence [3d ed], § 2511).

In the instant case, precluding defendant from relitigating his armed-robbery conviction would not infringe on these principles. Defendant was presumed innocent of the armed robbery until the prosecution effected its burden of persuasion beyond a reasonable doubt. Once the jury agreed and returned a verdict of guilty, this presumption of innocence disappeared.[24] Accordingly, it cannot be said that the use of this conviction violated defendant's due process right to be presumed innocent or that the prosecution did not meet its burden of proof beyond a reasonable doubt. Indeed, the conviction itself, along with its affirmation on appeal, forecloses these concerns.

Moreover, use of the armed-robbery conviction on retrial for felony murder will not negate or hinder defendant's presumption of innocence, nor will it relieve the prosecution from proving felony murder beyond a reasonable doubt.[25] Indeed, a

---

[24] See *Herrera v Collins,* 506 US —, —; 113 S Ct 853, 860; 122 L Ed 2d 203 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears").

[25] The concurring opinion relies on *Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979), for support in finding that use of preclusion would interfere with defendant's presumption of innocence. However, *Sandstrom* is distinguishable for two reasons. First, the *Sandstrom* Court was reviewing an instruction that presumed the element of intent—an intent yet to be found by any jury beyond a reasonable doubt. In the instant case, a jury has found defendant guilty of armed robbery beyond a reasonable doubt. Second,

standard instruction regarding both the presumption of innocence and proof beyond a reasonable doubt is certainly required and would protect these important rights.[26] See *Taylor, supra* at 485-486. However, once this is done, the defendant has received all his constitutional rights.

Finally, even if not persuaded that cautionary instructions by themselves would adequately protect these important rights, the stricture of felony murder in Michigan with respect to the separate and distinct malice requirement put to rest any possible infringement of these constitutional rights. As indicated previously, *Aaron* makes clear that the jury must first find that a murder occurred before considering whether to raise the crime to first-degree murder. In doing so, the jury must find a separate and distinct mens rea apart from the intent to commit the armed robbery. Combining this finding with the intent required for aiding and abetting this murder, as well as a temporal finding that the murder occurred during the course of the felony, defendant will surely be afforded his due process rights to the presumption of innocence and proof beyond a reasonable doubt.[27]

III

As the instant opinion indicates, collateral estop-

the *Sandstrom* jury was not given a limiting instruction as would be done in this case. Therefore, unlike *Sandstrom,* use of preclusion would not violate defendant's right to be presumed innocent.

[26] The concurring opinion argues that the stricture of felony murder would actually undermine the use of preclusion in this case because it would not further judicial economy. I disagree. Indeed, it would further judicial economy because the jury will not have to spend time considering whether the felony occurred and certainly will not have to question whether defendant was present where the felony occurred, i.e., in the house. Eliminating these considerations, as well as the time encompassed by the attorneys in argument, certainly would further judicial economy.

[27] See also text accompanying n 23.

pel and res judicata have often been applied offen-
sively against a criminal defendant. As in civil
litigation, it furthers the important policy of fore-
closing repetitive litigation and unnecessarily us-
ing a court's time. Indeed, it is consistent both
with the expectation of the parties and the public
—once a defendant received his day in court and
was afforded all his constitutional rights, the liti-
gation should cease and the defendant should have
to live with the consequences. That is exactly what
the doctrines of preclusion would accomplish in
the instant case.

Indeed, use of preclusion against this criminal
defendant clearly would not infringe on his consti-
tutional rights to a jury trial, the presumption of
innocence, or proof beyond a reasonable doubt.
Defendant was afforded all these rights at his
armed-robbery trial and will again be afforded all
these rights at retrial for felony murder. Further,
any additional concern that this procedure still
might violate these constitutional rights is put to
rest by the stricture of felony murder in Michigan.
Accordingly, I would reverse the decision of the
Court of Appeals and remand the case in accor-
dance with the guidelines set forth herein.

BOYLE and GRIFFIN, JJ., concurred with RILEY, J.